**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**OMEGA PATENTS, LLC,**
**a Georgia limited liability company,**

      **Plaintiff,**

**vs.**      **Case No.**      **6:13-cv-1950-Orl-31DAB**

**CALAMP CORP.,**
**a Delaware corporation,**

      **Defendant.**
_____/

**PLAINTIFF'S MOTION AND MEMORANDUM OF LAW TO EXCLUDE**
**THE TESTIMONY OF DEFENDANT'S EXPERT ERIC ANDREWS**

Omega Patents, LLC ("Omega") hereby moves this Court to exclude the proposed expert testimony of Eric Andrews, and in support thereof, states as follows:

I.    <u>BACKGROUND</u>

This is an action for patent infringement of five patents ("the patents-in-suit") asserted against Calamp products that interface a vehicle's data communications bus and provide vehicle tracking data. Calamp has disclosed two reports of Eric Andrews, one addressing the validity of the patents-in-suit and the second addressing infringement. Several flaws doom the opinions of Andrews, necessitating the exclusion of his testimony. First, in an effort to avoid infringement, Andrews offers opinions that rely on claim construction positions inconsistent with this Court's rulings. Andrews then uses different claim interpretations to support his invalidity opinions. The construction used by Andrews for validity is fatal to his noninfringement opinions (and vice versa). For his obviousness opinions, Andrews expressly relied on improper hindsight analysis to combine prior art references. Andrews then failed to consider any evidence of secondary

1

considerations in his opinions, a necessary consideration if Andrews' opinions on obviousness are to be relevant. Andrews only justification for his failure to weigh the secondary considerations is because he ran "out of time." Because of these flaws, Andrews opinions should be excluded.

II.    LEGAL STANDARD

In *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993), the Supreme Court rejected the previous rule of law requiring "general acceptance" of a theory to be admissible. Instead, the Court looked to Rule 702, F.R.E., to address the admissibility of expert testimony. The *Daubert* Court held that the court is to act as a "gatekeeper" and determine whether expert testimony should be presented, consistent with Rule 702. *Daubert* addressed the admissibility of scientific testimony and identified a nonexclusive list of criteria a court might use in assessing proffered expert testimony. *Id.* at 594-595. In 1999, the Supreme Court again spoke on the issue of expert testimony in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). The *Kumho Tire* Court expanded *Daubert* to provide that the trial judge's general "gate-keeping" obligation applies not only to testimony based upon "scientific" knowledge, but also to testimony based on "technical" and "other specialized" knowledge. The Court held that a trial court may consider one or more specific factors identified in *Daubert* to determine that testimony's reliability. *Id.* at 140. The Court warned that "[w]here such testimony's factual basis, data, principles, methods, or their application are called sufficiently into question, … the trial judge must determine whether the testimony has a 'reliable basis in the knowledge and experience of [the relevant] discipline.'" *Id.* at 149.

The Federal Rules of Evidence 702 now provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Rule 702, F.R.E.

As part of its gate-keeping role under Rule 702, a court is tasked with reviewing the proffered expert opinion testimony prior to submitting it to the trier of fact. The requirements for the admission of expert testimony in light of *Daubert* are well known: Expert testimony may be admitted into evidence if: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical or specialized expertise, to understand the evidence or to determine a fact in issue. *See City of Tuscaloosa v. Harcros Chems.*, 158 F.3d 548, 562 (11th Cir.1998) (footnote omitted). There are thus three discrete inquiries: qualifications, relevance, and reliability. *See Quiet Technology DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir.2003) (although there is "some overlap" among these inquiries, they "are distinct concepts that courts and litigants must take care not to conflate."). The burden of establishing these three requisites lies with the proponent of the evidence. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir.2004) (en banc).To the requirement of Rule 401 that evidence possess a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable," Rule 702 adds that expert evidence must "assist the trier of fact to understand the evidence or to determine

a fact in issue." *United States v. Frazier*, 387 F.3d at 1259. The evidence must "concerns matters that are beyond the understanding of the average lay person....Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." *Id.* at 1262-63.

An expert may not offer claim definitions at odds with the Court – claim construction is the Court's role. *See Cordis Corp. v. Boston Scientific Corp.*, 561 F.3d 1319, 1337 (Fed. Cir. 2009) ("We have held that it is improper to argue claim construction to the jury because the risk of confusing the jury is high when experts opine on claim construction."); *see also CytoLogix Corp. v. Ventana Med. Sys., Inc.*, 424 F.3d 1168, 1172 (Fed. Cir. 2005). "Of particular importance to the present matter, expert opinions in patent litigation must be based on the court's claim construction in order to be considered relevant and reliable and, therefore, admissible." *Ecolab USA Inc. v. Diversey, Inc.*, 2015 U.S. Dist. LEXIS 63258, *14 (D. Minn. Apr. 28, 2015); *citing Dynetix Design Solutions, Inc. v. Synopsys, Inc.*, 2013 U.S. Dist. LEXIS 120404, *13 (N.D. Cal. Aug. 22, 2013) ("Any expert testimony must adhere to the court's claim constructions and must not apply alternative claim constructions."); *see also Mediatek Inc. v. Freescale Semiconductor, Inc.,* 2014 U.S. Dist. LEXIS 31461, *27 (N.D. Cal. Mar. 5, 2014)(precluding expert opinions that construed claim terms in contravention of the district court's construction); *Hochstein v. Microsoft Corp.*, 2009 U.S. Dist. LEXIS 57698, *5 (E.D. Mich. July 7, 2009) (granting the plaintiffs' motion to exclude testimony from the defendant's expert that conflicted with the court's claim construction). These conclusions make perfect sense, as a determination of patent infringement must begin with proper claim construction, a question of law for the Court. See *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998) (en banc) (citations omitted) ("First, the court determines the scope and meaning of the patent claims asserted . . .

4

[and second,] the properly construed claims are compared to the allegedly infringing device");

*see also Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977 (Fed. Cir. 1995), *aff'd* 517

U.S. 370 (1996) (Claim construction is a legal issue to generally be resolved by the Court.)

III.    ANDREWS' OPINIONS SHOULD BE EXCLUDED FOR USE OF INCONSISTENT AND IMPROPER CLAIM CONSTRUCTION

On April 15, 2015, Calamp disclosed the first expert report of Andrews, where Andrews offered opinions challenging the validity of the patents in suit. In preparing his initial report, Andrews reviewed the patents and the prior art provided to Andrews by Calamp's counsel. (Ex. 12, p. 4, 5, 14; Ex. D, 12:4-7.[1]) The opinions in Andrews' April 15 invalidity report relied on the Court's claim construction. (Ex. 12, p. 16-17.) After tendering this initial report, Calamp's attorneys provided Andrews with details on the operation of Calamp's accused products, and Andrews was asked to prepare a noninfringement position in opposition to Omega's expert witness. (Ex. D, 96:24-97:20.) Although Andrews' written report claimed to use the Court's claim construction, Andrews instead relied on new claim limitations added to the Court's construction in order to come up with noninfringement opinions. (*Id.*) Not only did Andrews rely on new claim constructions not presented to or adopted by this Court, but he used differing constructions between his two reports, creating unreliability and inconsistency that is clearly at odds with the law. As a result, Andrews' opinions should be excluded.

a)    The Term "Controller" as Construed by Andrews

The term controller is found in the claims of all five of the patents-in-suit. The parties agreed to the definition of a controller nearly a year ago that was adopted by the Court: "Electronic circuitry that performs one or more control functions." (Doc. 50, p. 6.) Although Andrews contends in his rebuttal report that he "interpreted the meaning of the claim language in

---

[1] All numbered exhibits have been lodged in the publicly-filed Appendix. The parties have sought leave to file all lettered exhibits under seal and await the Court's Order on this issue.

accordance with [the Court's construction]," Andrews acknowledged in deposition that his noninfringement opinions rely on <u>additional limitations</u> he imports into the Court's construction to manufacture his noninfringement opinions. After acknowledging the Court's construction in his written noninfringement report, Andrews decides the Court's definition of a controller should be limited further, requiring the controller to *also* "enable a physical change in a device or the system, for example, locking a door, starting the engine, or turning on a light." (Ex. C, p. 10-11.) Andrews conceded during deposition that causing a "physical change" in a device was *his language*, not that of the Court:

> Q.· Well, the court's definition is that it causes a control function; right?
>
> A.· Right.
>
> Q.· And it's your language with the physical change; right?
>
> A.· Right.
>
> Q.· That's nothing that the judge said; correct?
>
> A.· As far as I know, correct.

(Ex. D, 33:5-12.) Andrews went even further, claiming that the physical change must be "observable [ ] from the outside." (*Id*., 26:22-25.) While certainly the patents-in-suit reference door locks and engine starting in various embodiments, there is nothing in the specifications that limits a controller as claimed in the asserted claims to producing an "observable physical change." Indeed, Andrews was unable to identify any portion of the patents or claims that supported such a limitation:

> Q.· There's nothing expressed in the patents in suit that suggests that a controller must cause a physical change in the device?
>
> A.· Correct.
>
> * * *

> Q.· Was there anything in the claims of the patents in suit that expressly supports your definition that a physical change is necessary to qualify as a controller?
>
> A.· No.

(*Id*., 36:14-17.) Notably, when reading the patents and forming his opinions on validity, Andrews never found these new limitations to be proper. The limitations were only added when Andrews had to arrive at a noninfringement opinion:

> Q.· So when you went through your invalidity analysis and you read the claims of the patents, you didn't immediately determine that a controller as described in the claims had to cause this physical change of a device; is that right?· It wasn't until later, when you were looking at infringement, that you determined that a controller needed to cause a physical change in a device?
>
> A.· Yes.
>
> * * *
>
> Q.· Right.· And the additional information that you received that led to a modification of your claim construction was understanding how CalAmp's products worked; right?
>
> A.· Correct.·

(*Id.*, 96:6-14, 97:11-15.) While the Federal Circuit has recognized that claim construction "takes place in the context" of an accused device, "claims may not be construed with reference to the accused device." *Wilson Sporting Goods Co. v. Hillerich & Bradsby Co*., 442 F.3d 1322, 1330-1331 (Fed. Cir. 2006), quoting *NeoMagic Corp. v. Trident Microsystems, Inc*., 287 F.3d 1062, 1074 (Fed. Cir. 2002). This principle makes sense because it prevents reaching "a preconceived judgment of infringement or noninfringement." *Wilson Sporting Goods*, 442 F.3d at 1331. Of course, the very purpose of Andrews' introduction of new limitations is to arrive at an opinion of noninfringement. Andrews admits that without these newly-added limitations – limitations not found in the Court's construction – the accused products infringe:

7

> Q.· Coming back to the earlier line of questioning, would you agree with me that if the judge rejects your limitation on a controller needing to make a physical change to a device, that this multi-vehicle compatible controller is met by the LMU-3000 and 3030?
>
> A.· Yes.

(Ex. D, 143:15-20.)

If Calamp believed the limitation now proposed by Andrews were appropriate (and had any support in the patents), it had the opportunity to propose such a construction to the Court last year during the claim construction proceedings. Calamp did not ask the Court to include such limitations in its claim construction rulings. Calamp cannot now bring those limitations in through the unsupported testimony of an expert witness. Andrews' improper and inconsistent claim limitations permeate the entirety of his opinions, as the term controller is in every claim. Andrews' reliance on his own claim construction rather than that of the Court requires that his opinions be excluded. *See, e.g., Cordis Corp.*, 561 F.3d at 1337; *Ecolab USA*, 2015 U.S. Dist. LEXIS 63258, *14-15.

    b)    <u>The Term "Controller storing a user selected reference location"</u>

In discussing his opinion of noninfringement of the '989 Patent, Andrews identifies the claim term "controller storing a user selected reference location" as a term of importance for the purposes of his opinions. The Court's CMSO required that the parties identify claim terms for which construction was needed, and then to submit claim construction briefs on September 5, 2014. (Doc. 29, p. 1.) This Court issued an Order prior to the claim construction hearing limiting the parties to terms identified in the briefs (Doc. 42), and on November 24, 2014, received argument from the parties on claim construction. The Court subsequently issued an Order on claim construction, addressing the terms identified by the parties. (Doc. 50.) Notably, the term "controller storing a user selected reference location" has never been identified by Calamp as a

disputed term and it cannot now "back door" the proposed claim construction through an expert's testimony at trial.

Ignoring the failure of Calamp to timely raise the meaning of the term "controller storing a user selected reference location," Andrews states that "[b]ased on the prosecution history, it appears that the USPTO allowed the '989 patent based on this claimed ability of a user to select a reference location <u>at the vehicle</u>." (Ex. C, p. 18, emphasis added.) Andrews goes on to provide his own interpretation of the claim term, the first time Omega has ever heard of any supposed dispute regarding the meaning of the term:

> Because it was known to those skilled in the art to set a predetermined location (such as the car dealership example cited by Omega in the '989 patent), it is my opinion that <u>one of ordinary skill in the art would read this limitation as requiring that the user select the reference location at the controller at the vehicle</u>. This is consistent with what is described in the '989 patent.

(Ex. C, p. 19, emphasis added.) Based on *Andrews'* interpretation, Andrews states that the accused products do not allow "a user [to] select a reference location at the controller," and therefore it is his opinion that the Calamp products do not infringe. (*Id*., p. 19-20.) There can be no dispute that Andrews added this limitation solely for purposes of noninfringement, as he did not find this limitation was appropriate for his invalidity opinion. (Ex. D, 81:8-17.) Andrews recognized that the art he relied on for his invalidity opinions did not include the newly-added limitation he now relies on for his noninfringement opinion. (Ex. D, 133:13-25.) This is yet another example of crafting claim limitations based on the accused products in an effort to avoid infringement.

Other claims of the '989 Patent help establish that Andrews' newly-added limitation is improper. The doctrine of claim differentiation "creates a presumption that each claim in a patent has a different scope." *Versa Corp. v. Ag-Bag Int'l Ltd*., 392 F.3d 1325, 1330 (Fed. Cir. 2004),

9

quoting *Comark Communs. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998). One embodiment of the '989 Patent describes a user selected reference location that can be selected at the vehicle. (Ex. 2, 29:30-37.) There are specific claims directed to such an embodiment, including claim 1 of the '989 Patent, which requires "at least one input device to be positioned within the vehicle for setting the user selected reference location." Other claims, such as asserted claim 23, do not contain this limitation. The difference between claim 1 and claim 23 lies in the inclusion of setting the user-selected reference location at the vehicle in claim 1, with no such limitation in claim 23. Without this distinction, these claims would overlap in claim scope, making Andrews' interpretation contrary to law. *See Versa Corp.*, 392 F.3d at 1330. Andrews admits he failed to review other claims to determine whether the limitation he seeks to add to claim 23 is already found in other claims. (Ex. D, 72:25-73:4.)

Perhaps the parties could have debated this issue if raised in a timely manner, but waiting nearly a year after the parties exchanged disputed terms, and long after this Court has addressed claim construction, is improper. Andrews should be precluded from offering opinions on the '989 Patent, as his opinions inconsistently apply his own interpretation of the claim terms.

   c)   The Term "Command Signal" as Construed by Andrews

The term "command signal" has been construed by the Court to mean a "signal generated on the data communications bus for operating a vehicle device." (Doc. 50, p. 15.) Andrews argues that the claimed set of command signals must <u>also</u> be "using only a single [bus] interface protocol…" (Ex. C, p. 13.) The modified definition relied on by Andrews introduces further limitations beyond the Court's claim construction, and beyond even what Calamp proposed during *Markman*. Andrews then uses his own construction to offer his opinions on noninfringement: "Because a non-working command signal <u>must be compatible with the</u>

10

particular data communications bus, a Mode 1, PID 0 request that is not compatible with the particular bus on which it was sent cannot be a non-working command signal." (Ex. C, p. 14, emphasis added.) There is simply no support for Andrews' new claim limitation. This noninfringement opinion relies entirely on the additional limitations put forward by Andrews for the first time months after this Court resolved claim construction. Because Andrews relies on his own interpretation from the claims of each of the patents-in-suit for purposes of determining noninfringement, he should be precluded from offering such opinions.

IV.    ANDREWS' OPINIONS IMPROPERLY RELY ON INCONSISTENT CLAIM INTERPRETATIONS

Not only is Andrews' introduction of new claim limitations improper, but Andrews uses his altered claim interpretations inconsistently across his opinions, further undermining the reliability of such opinions. Andrews applies his additional limitations only to his noninfringement opinions, creating inconsistent opinions, depending on which interpretation he used. As the Federal Circuit has held, "[h]aving construed the claims one way for determining their validity, it is axiomatic that the claims must be construed in the same way for infringement." *W.L. Gore & Assoc. v. Garlock*, 842 F.2d 1275, 1279 (Fed. Cir. 1988); *see also Kimberly-Clark Corp. v. Johnson & Johnson*, 745 F.2d 1437, 1449, 223 USPQ 603, 610 (Fed. Cir. 1984)."

Contradictions in Andrews' own opinions illustrate why one must apply the same construction for both validity and infringement. Andrews admitted that if he were to apply the construction for controller he used for his validity opinions, the accused products infringe. (Ex. D, 143:15-20.) Andrews cannot pick and choose the construction that is most beneficial to his client. Instead, Andrews is required to apply this Court's construction, and his failure to do so renders his opinions unreliable, contrary to the law and therefore unhelpful to the jury.

11

V.    ANDREWS' OPINIONS SHOULD BE EXCLUDED FOR FAILING TO ARTICULATE A MOTIVATION TO COMBINE OR CONSIDER SECONDARY CONSIDERATIONS OF NON-OBVIOUSNESS

Obviousness can only be established by showing through clear and convincing evidence that a <u>combination of prior art references</u> demonstrates that the invention would have been obvious to one of skill in the art at the time of the invention.  *See*, *Cohesive Techs. Inc. v. Waters Corp.*, 543 F.3d 1351, 1364 (Fed. Cir. 2008). One cannot simply identify the elements of a claim in various prior art references, then use the patent as a road map to piece the prior art together. *Princeton Biochemicals, Inc. v. Beckman Coulter, Inc.*, 411 F.3d 1332, 1337 (Fed. Cir. 2005). Instead, to combine prior art references for an obviousness theory, there must be an <u>articulated basis or reason</u> that one of ordinary skill in the art would combine the references.  *See KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418 (2007) (citing *In re Kahn*, 441 F.3d 977, 988 (Fed. Cir. 2006) ("there must be some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness."). The failure to "state how or why a person ordinarily skilled in the art would have found the claims of the [asserted] patent obvious in light of some combination of those particular references" is a proper basis to exclude an expert's opinions on invalidity. *Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1373 (Fed. Cir. 2008)(affirming the preclusion of an expert witness for failure to articulate a basis to combine prior art references).

Andrews' opinions of invalidity as to all five of the patents-in-suit are based on obviousness. (Ex. D, 115:18-22.) With respect to four of the patents ('876, '885, '727 and '278), Andrews identifies several combinations of references, but all rely on one of two references from the Society of Automotive Engineers ("SAE"):

12

| Patent-in-suit | Reference Combination |
|---|---|
| '876 Patent | Braitberg with SAE J1978 |
| | Bambini with SAE J1978 |
| '885 Patent | Braitberg with SAE J1978 |
| | CellPort MobileWeb with SAE J1978 |
| '727 Patent | Spaur with SAE J1979 |
| | NeoTech Mobile-Trak II with SAE J1979 |
| '278 Patent | Bambini with SAE J1978 |
| | Spaur with SAE J1978 |

On three of the four patents, Andrews identifies SAE J1978, which Andrews described as a specification for a "scan tool" for diagnostics and emissions. (Ex. 12, p. 11.) Andrews also cites to SAE J1979, a standard for bus messages, for his opinions on the '727 patent. However, Andrews fails to articulate a basis for combining these references – a requirement to establish his opinions as relevant or reliable. *See Innogenetics,* 512 F.3d at 1373; *see also KSR*, 550 U.S. at 418. Andrews' written invalidity report expressly relies on hindsight reasoning to support his obviousness conclusions, stating that Omega's infringement contentions (from 2015) establish that "use of the J1978 publication is proper in my analysis." (Ex. 12, p. 20.) Put another way, Andrews improperly uses Omega's 2015 infringement contentions and the patents themselves as a road map to piece the prior art together. *Princeton*, 411 F.3d at 1337. At deposition, the only logic Andrews could muster was that the mere existence of the references would suggest combining the references. (Ex. D, 52:19-23.) Both methodologies are improper.

Obviousness can only be established through clear and convincing evidence that a combination of prior art references demonstrates that the invention would have been obvious to one of skill in the art <u>at the time of the invention</u>. *See*, *Cohesive Techs. Inc. v. Waters Corp.*, 543 F.3d 1351, 1364 (Fed. Cir. 2008). Consideration of obviousness at the time of the invention (rather that during litigation attacking the patents) is critical, and the use of hindsight to determine obviousness is improper. "[H]indsight analysis is inappropriate because obviousness

13

must be assessed at the time the invention was made." *Eurand, Inc. v. Mylan Pharms., Inc. (In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.)*, 676 F.3d 1063, 1073 (Fed. Cir. 2012).

In addition to the requirement to articulate a motivation to combine references, another mechanism for protecting against hindsight analysis is the use of objective indicia of nonobviousness. As explained decades ago by the Supreme Court, the objective indicia "guard against slipping into use of hindsight and to resist the temptation to read into the prior art the teachings of the invention in issue." *Graham v. John Deere Co*., 383 U.S. 1, 36 (1966). Similarly, the Federal Circuit has held that "[t]hese objective criteria help inoculate the obviousness analysis against hindsight." *Mintz v. Dietz & Watson, Inc*., 679 F.3d 1372, 1378 (Fed. Cir. 2012). Objective indicia of non-obviousness "may often be the most probative and cogent evidence of nonobviousness in the record." *Ortho-McNeil Pharm. v. Mylan Labs., Inc.,* 520 F.3d 1358, 1365 (Fed. Cir. 2008). Evidence supporting the objective indicia of nonobviousess can take many forms, including "evidence of unexpected results, expert skepticism, copying, commercial success, praise by others (even from the accused infringer PCM), failure by others, and long-felt need." *Mintz*, 679 f.3d at 1379. Licenses and sales evidence also provide objective evidence of nonobviousness. *See Amgen, Inc. v. Hoechst Marion Roussel, Inc*., 339 F. Supp. 2d 202, 314-315 (D. Mass. 2004), *J.T. Eaton & Co. v. Atlantic Paste & Glue Co*., 106 F.3d 1563 (Fed. Cir. 1997).

While Andrews acknowledges that he must consider objective evidence of nonobviousness (Ex. 12, p. 18), he admits he failed to do so. (Ex. D, 101:7-17, 118:2-9.) When asked whether he inquired of objective evidence of nonobviousness from Calamp, he explained he ran "out of time" while preparing his report. (*Id.*, 117:21-118:1.) In a decision reversing the

denial of JMOL as to patent validity, the Federal Circuit also upheld the district court's exclusion of an expert who "failed to address why one of ordinary skill in the art at the time of the invention [ ] would be motivated to combine these three references." *InTouch Techs., Inc. v. VGo Communs., Inc*., 751 F.3d 1327, 1352 (Fed. Cir. 2014).

The Federal Circuit noted that an expert must guard against "hindsight bias by appropriately considering all objective evidence of nonobviousness." *Id*. "[Where] an expert purports to testify, not just to certain factual components underlying the obviousness inquiry, but to the ultimate question of obviousness, the expert must consider all factors relevant to that ultimate question." *Id*. at 1352, n. 8. Andrews did not consider <u>any</u> evidence of secondary considerations, including over a dozen licenses for the patents-in-suit and tens of millions of dollars in royalties related to the patents-in-suit. These flaws in Andrews opinions undermine any relevance and reliability and require that his opinions be excluded.

VI.    <u>ANDREWS SHOULD NOT BE PERMITTED TO OFFER OPINIONS NOT CLEARLY REPORTED</u>

Andrews provides claim charts that address the claims on an element-by-element basis, as required to analyze validity (and infringement), for nine (9) different combinations of alleged prior art. Calamp has identified far more supposed prior art references which never made it into Andrews' analysis. Andrews merely identifies these "additional" references, claiming they could somehow "be used alone, in combination with themselves, or in combination with the references disclosed above to show additional reasons why the asserted Omega patents are not valid in view of the prior art." (Ex. 12, p. 14.) Andrews does not provide any details or support for these "catch-all" reference opinions, must less provide an element-by-element analysis identifying where each of the references allegedly discloses elements of the patents-in-suit. Conclusory opinions on these ten "additional" references fail to comply with Rule 26, Fed.R.Civ.P.

In *Promega Corp. v. Applied Biosystems, LLC*, 2013 U.S. Dist. LEXIS 189189 (N.D. Ill. May 27, 2013), the district court excluded "expert" opinions of invalidity that adopted invalidity theories of his client but provided no analysis:

> [The expert] report incorporates by reference an "invalidity claim chart" prepared <u>by Promega's attorneys</u>. The chart consists of excerpts from the Ruth patent and other citations, with no analysis. Experts may not merely rubber stamp a lawyer's argument. But Panayotatos's report also contains his own assessments of the Ruth patent, and he may testify to those—but only to those.

2013 U.S. Dist. LEXIS 189189, *17 (underlining added); *see also Air Turbine Tech., Inc. v. Atlas Copco AB*, 410 F.3d 701, 713 (Fed. Cir. 2005) (holding that the district court did not abuse its discretion when excluding expert testimony insofar as the "testimony exceeded the material disclosed in his expert report"); *Omega Patents, LLC v. Fortin Auto Radio, Inc*., 2007 U.S. Dist. LEXIS 94209, *8 (M.D. Fla. Feb. 5, 2007)(excluding expert opinions outside of the scope of the report, all of which failed to apply the court's claim construction).

Here, Andrews' report makes reference to invalidity positions of Calamp and recites prior art identified by Calamp, but fails to provide any of his own analysis. Like the facts in Promega, Andrews simply rubber-stamped the art identified by Calamp. Andrews justified his failure to properly identify where he contends each element of the asserted claims can be found in the prior art with the same excuse relied on for other inadequacies in his report: "I was out of time." (Ex. D, 107:9-12.) Such an attempt falls far short of the requirement that Andrews provide the "basis and reasons" for his supposed opinions that these references invalidate any of the claims of the patents-in-suit. Andrews should be precluded from offering any opinions of invalidity based on these "additional" references.

16

VII.    CONCLUSION

  Andrews offers numerous noninfringement opinions that rely on limitations in the claims not found in the Court's claim construction. It is not within the purview of an expert witness to reinterpret and further define terms already construed by the Court. Nor is it proper for an expert to interpret claim terms never identified by the parties for purposes of offering noninfringement positions. This Court's CMSO required the identification any disputed terms, and Calamp failed to identify terms now relied upon by its expert in contravention of the Order. Moreover, the introduction of new claim limitations by Andrews were clearly driven by his effort to develop noninfringement positions, and result in the inconsistent application of the claims in his invalidity and noninfringement opinions. Further, Andrews fails to avoid hindsight bias in his invalidity opinions, instead embracing it by using Omega's 2015 infringement contentions to guide his invalidity analysis. When he ran out of time, Andrews tried to apture all other theories of counsel with an improper catch-all opinion that is devoid of any analysis. Andrews' opinions in this matter are improper and unreliable; they should be excluded in their entirety.

### LOCAL RULE 3.01(g) CERTIFICATION

  Pursuant to Local Rule 3.01(g), counsel for the Omega has conferred with counsel for Calamp, who stated that Calamp is opposed to the relief sought in this Motion.

Respectfully submitted July 1, 2015.

/s/Ryan T. Santurri
Brian R. Gilchrist, Florida Bar No. 774065
bgilchrist@addmg.com
Ryan T. Santurri, FL Bar No. 015698
rsanturri@addmg.com
ALLEN, DYER, DOPPELT,
MILBRATH & GILCHRIST, P.A.
255 South Orange Avenue, #1401
Orlando, FL  32801
Telephone:     (407) 841-2330
Facsimile:      (407) 841-2343

*Counsel for Omega Patents, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on July 1, 2015, I electronically-filed the foregoing using the Case

Management/Electronic Case Filing ("CM/ECF") System, which will send a Notice of Electronic

Filing to the following CM/ECF participants:


Christopher S. Carver, Esq.
Florida Bar No. 993580
AKERMAN LLP
One Southeast Third Avenue, 25th Floor
Miami, FL 33131-1714
Tel.: 305-374-5600
Fax: 305-374-5095
E-mail: christopher.carver@akerman.com

Joel A. Kauth, Esq.
Eugene Chong, Esq.
KPPB LLP
2400 East Katella Avenue, Suite 1050
Anaheim, CA 92806
Tel.: (949) 852-0000
Fax: (949) 852-0004
E-mail: Joel.Kauth@kppb.com
          Eugene.Chong@kppb.com

Peter A. Chiabotti, Esq.
Florida Bar No. 0602671
AKERMAN LLP
222 Lakeview Avenue, 4th Floor
West Palm Beach, FL 33401
Tel.: (561) 653-5000
Fax: (561) 653-5333
E-mail: peter.chiabotti@akerman.com

Carrie Ann Wozniak, Esq.
Florida Bar No. 0012666
AKERMAN LLP
420 S. Orange Avenue, Suite 1200
Orlando, FL 32801
Tel: (407) 423-4000
Fax: (407) 843-6610
Email: carrieann.wozniak@akerman.com


/s/Ryan T. Santurri
Ryan T. Santurri

S:\AIMDOCS\OMEGA\0058319\11S9164.DOC