**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

OMEGA PATENTS, LLC,

                Plaintiff,

    v.

CALAMP CORP.,

                Defendant.

No. 6:13-CV-1950-PGB-DAB

**CALAMP'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND
FOR A NEW TRIAL**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................1

LEGAL STANDARDS ..........................................................................................1

ARGUMENT ..........................................................................................................3

I.    The Court Should Grant CalAmp's Renewed Motion For JMOL That It Does Not Infringe The Asserted Patents.........................................................3

    A.    CalAmp's Accused Devices Do Not Meet The "Transmitter And A Receiver" Limitation Of The '876 And '885 Patents. ................................3

    B.    The '876 And '885 Patents Are Not Infringed By CalAmp Because They Require Connection To A Customer's Vehicle. ..................................5

    C.    CalAmp's Accused Devices Do Not Meet The "Device Codes" Limitations Of The '278, '885, And '876 Patents. ......................................5

        1.    CalAmp's Accused Devices Do Not Have A "Corresponding Device Code" As Required By The '278 Patent.............................6

        2.    CalAmp's Accused Devices Do Not "Determin[e] A Match Between A Read Device Code And The Stored Device Codes."........................................................................................6

    D.    CalAmp's Accused Devices Do Not Read And Use Vehicle Speed Data From The Vehicle Bus As Required By The '727 Patent. .................7

    E.    CalAmp's Accused Devices Do Not Use "Command Signals" As Required By All Asserted Claims Of The '876 Patent. ............................10

    F.    CalAmp's Accused Devices Do Not Have A "Controller" That Performs "Control Functions" As Required By All Asserted Patents .......11

II.    The Court Should Grant CalAmp's Renewed Motion For JMOL Of Invalidity. ...............................................................................................12

    A.    CalAmp Presented Unrebutted Clear And Convincing Evidence That Each Of The Patents-in-Suit Is Invalid As Obvious. ................................12

    B.    The Jury's Verdict Finding Secondary Considerations Is Unsupported. .........................................................................................15

III.    The Court Should Grant CalAmp's Renewed Motion for JMOL Of No Willfulness. ..........................................................................................17

i

IV.     Damages Should Not Be Enhanced. .........................................................................22

V.      This Is Not An Exceptional Case And No Attorneys' Fees Should Be
        Awarded. ...................................................................................................................26

VI.     CalAmp Should Be Granted A New Trial ...............................................................26

        A.      CalAmp Should Be Granted A New Trial On Damages. .........................26

        B.      CalAmp Should Be Granted A New Trial On Willfulness. ......................29

        C.      Erroneous Claim Construction Rulings Require A New Trial. .................31

        D.      Other Evidentiary Rulings Require A New Trial. ....................................32

        E.      The Cumulative Effect Of The Evidentiary Errors Deprived CalAmp
                Of A Fair Trial. .......................................................................................35

        F.      Weight of Evidence ..................................................................................35

CONCLUSION ...................................................................................................................35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Accentra, Inc. v. Staples, Inc.*,
   500 F. App'x 922 (Fed. Cir. 2013) ...................................................................26

*ACCO Brands, Inc. v. ABA Locks Mfr. Co.*,
   501 F.3d 1307 (Fed. Cir. 2007).........................................................................9

*Acumed LLC v. Stryker Corp.*,
   483 F.3d 800 (Fed. Cir. 2007)..........................................................................30

*Applied Med. Res. Corp. v. U.S. Surgical Corp.*,
   435 F.3d 1356 (Fed. Cir. 2006).........................................................................30

*Arthur v. King*,
   500 F.3d 1335 (11th Cir. 2007) ..........................................................................3

*Ashland Oil, Inc. v. Delta Resins & Refractories, Inc.*,
   776 F.2d 281 (Fed. Cir. 1985)...........................................................................15

*Beech Aircraft Corp. v. Rainey*,
   488 U.S. 153 (1988)..........................................................................................29

*Braun Inc. v. Dynamics Corp. of Am.*,
   975 F.2d 815 (Fed. Cir. 1992)...........................................................................17

*Centillion Data Sys., LLC v. Qwest Commc'ns, Int'l, Inc.*,
   631 F.3d 1279 (Fed. Cir. 2011).......................................................................4, 5

*Cleveland v. Home Shopping Network, Inc.*,
   369 F.3d 1189 (11th Cir. 2004) ..........................................................................1

*Collado v. United Parcel Serv., Co.*,
   419 F.3d 1143 (11th Cir. 2005) ..........................................................................2

*Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*,
   851 F.2d 1387 (Fed. Cir. 1988).........................................................................15

*DR Sys., Inc. v. Eastman Kodak Co.*,
   No. 08-cv-669, 2009 WL 3756765 (S.D. Cal. Nov. 9, 2009).............................29

*Dynacore Holdings Corp. v. U.S. Philips Corp.*,
   363 F.3d 1263 (Fed. Cir. 2004)....................................................................10, 28

*Eon Corp. IP Holdings LLC v. Silver Spring Networks, Inc.*,
    815 F.3d 1314 (Fed. Cir. 2016)..................................................................32

*Fujitsu Ltd. v. Netgear Inc.*,
    620 F.3d 1321 (Fed. Cir. 2010)....................................................................9

*In re GPAC Inc.*,
    57 F.3d 1573 (Fed. Cir. 1995)....................................................................15

*Halo Electronics, Inc. v. Pulse Electronics, Inc.*,
    136 S. Ct. 1923 (2016)...............................................................17, 22, 24

*Hanson v. Alpine Valley Ski Area, Inc.*,
    718 F.2d 1075 (Fed. Cir. 1983)..................................................................28

*Harris Corp. v. Ericsson Inc.*,
    417 F.3d 1241 (Fed. Cir. 2005)..................................................................30

*Iron Grip Barbell Co. v. USA Sports, Inc.*,
    392 F.3d 1317 (Fed. Cir. 2004)...........................................................16, 22

*Kornacki v. S. Farm Bureau Life Ins. Co.*,
    No. 3:14-cv-784, 2015 WL 7756137 (M.D. Fla. Dec. 1, 2015) ...................2

*KSR Int'l Co. v. Teleflex, Inc.*,
    550 U.S. 398 (2007).............................................................................13, 15

*Lemelson v. United States*,
    752 F.2d 1538 (Fed. Cir. 1985)..................................................................14

*Litton Sys., Inc. v. Honeywell, Inc.*,
    140 F.3d 1449 (Fed. Cir. 1998), *abrogated on other grounds by Festo Corp. v.*
    *Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 234 F.3d 558 (Fed. Cir. 2000) ........2

*LoggerHead Tools, LLC v. Sears Holdings Corp.*,
    No. 12-cv-9033, 2016 WL 5112017 (N.D. Ill. Sept. 20, 2016)...................18

*Lucent Techs., Inc. v. Gateway, Inc.*,
    580 F.3d 1301 (Fed. Cir. 2009)..................................................................28

*Martin v. Tex. Emp'rs. Ins. Ass'n*,
    193 F.2d 645 (5th Cir. 1952) .....................................................................35

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
    521 F.3d 1351 (Fed. Cir. 2008)..................................................................32

*Ohio Willow Wood Co. v. Alps S., LLC*,
    735 F.3d 1333 (Fed. Cir. 2013)..................................................................17

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) ...........................................................................12

*Radio Steel & Mfg. Co. v. MTD Prods., Inc.*,
  788 F.2d 1554 (Fed. Cir. 1986)...........................................................................................19

*Read Corp. v. Portec, Inc.*,
  970 F.2d 816 (Fed. Cir. 1992).................................................................................21, 22, 26

*Richards v. Michelin Tire Corp.*,
  21 F.3d 1048 (11th Cir. 1994) ...............................................................................................2

*Richardson v. Bombardier, Inc.*,
  No. 8:03-cv-544, 2005 WL 3087864 (M.D. Fla. Nov. 16, 2005)...........................................2

*In re Rouffet*,
  149 F.3d 1350 (Fed. Cir. 1998).............................................................................................14

*Specialized Transp. of Tampa Bay, Inc. v. Nestle Waters N. Am., Inc.*,
  No. 8:06-cv-421, 2009 WL 1046135 (M.D. Fla. Apr. 19, 2009) ............................................2

*Starbuck v. R.J. Reynolds Tobacco Co.*,
  102 F. Supp. 3d 1281 (M.D. Fla. 2015)..................................................................................2

*Tokai Corp. v. Easton Enters., Inc.*,
  632 F.3d 1358 (Fed. Cir. 2011)............................................................................................16

*Uniloc USA, Inc. v. Microsoft Corp.*,
  632 F.3d 1292 (Fed. Cir. 2011)............................................................................................28

*Verizon Servs. Corp. v. Vonage Holdings Corp.*,
  503 F.3d 1295 (Fed. Cir. 2007)............................................................................................26

*WBIP, LLC v. Kohler Co.*,
  829 F.3d 1317 (Fed. Cir. 2016)......................................................................................17, 31

*WesternGeco LLC v. ION Geophysical Corp.*,
  837 F.3d 1358 (Fed. Cir. 2016)......................................................................................17, 24

*Wordtech Sys., Inc. v. Integrated Networks Sols., Inc.*,
  609 F.3d 1308 (Fed. Cir. 2010)..............................................................................................3

*Wyers v. Master Lock Co.*,
  616 F.3d 1231 (Fed. Cir. 2010)..............................................................................14, 17, 33

**Statutes**

35 U.S.C. § 271(a) ...................................................................................................................3

**Other Authorities**

37 C.F.R. 1.56(b) .......................................................................................................21

Fed. R. Evid. 801(c)(2) .............................................................................................30

Fed. R. Civ. P. 50(b) ...................................................................................................1

Fed. R. Civ. P. 59(e) ...............................................................................................2, 3

## INTRODUCTION

Based on the evidence at trial, a reasonable jury could only conclude that CalAmp did not infringe Omega's patents and that those patents are invalid (as the Patent Office has now found). The evidence further compels a judgment that any infringement was not willful and that Omega failed to prove its damages. Beyond its lack of support in the record, the jury's verdict was infected by serious and prejudicial errors at trial, including the exclusion of crucial relevant evidence and the admission of highly prejudicial irrelevant evidence. A prime example is the exclusion of CalAmp's oral and written opinions of counsel, the underpinnings of the opinions, and testimony on CalAmp's good faith beliefs based on those opinions and its own investigation. That, in itself, made it impossible for the jury to fairly assess willfulness, and compounding the prejudice, Omega asked the jury to draw an adverse inference because CalAmp did not present the very evidence Omega convinced this Court to exclude. *E.g.,* Dkt. 184 at 33:18-24 ("We heard all about his big stack and his little stack. Didn't hear any analysis of those patents"). These and other errors tainted the jury's analysis and undermine its verdict. Judgment as a matter of law and/or a new trial should be granted, and the Court should alter its judgment and deny enhanced damages and attorneys' fees.

## LEGAL STANDARDS

Judgment as a matter of law ("JMOL") under Rule 50(b) is appropriate "when there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1192 (11th Cir. 2004). When deciding a motion for JMOL, the court "look[s] at the record evidence, drawing all

inferences in favor of the nonmoving party." *Collado v. United Parcel Serv., Co.*, 419 F.3d 1143, 1149 (11th Cir. 2005).

A new trial should be ordered where the verdict is against the weight of the evidence, damages are excessive, or the trial was not fair to the moving party; grounds for a new trial include "substantial errors in admission or rejection of evidence." *Specialized Transp. of Tampa Bay, Inc. v. Nestle Waters N. Am., Inc.*, No. 8:06-cv-421, 2009 WL 1046135, *1 (M.D. Fla. Apr. 19, 2009) (citation omitted). A new trial may be granted based on the weight of the evidence "even though there may be substantial evidence which would prevent the direction of a verdict." *Starbuck v. R.J. Reynolds Tobacco Co.*, 102 F. Supp. 3d 1281, 1304 (M.D. Fla. 2015) (citation omitted). A new trial should also be granted "if a jury may have relied on an impermissible basis in reaching its verdict." *Litton Sys., Inc. v. Honeywell, Inc.*, 140 F.3d 1449, 1465 (Fed. Cir. 1998), *abrogated on other grounds by Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 234 F.3d 558 (Fed. Cir. 2000); *see also Richards v. Michelin Tire Corp.*, 21 F.3d 1048, 1055 (11th Cir. 1994) (where two or more claims are submitted in one interrogatory, "a new trial may be required if either of the claims was erroneously submitted, as there is no way to be sure that the jury's verdict was not predicated solely on the invalid claim."). Where evidentiary errors affected a party's substantial rights, a new trial is required. *Specialized Transp.*, 2009 WL 1046135, *9. If objections were not raised, the court examines the issue for plain error. *Richardson v. Bombardier, Inc.*, No. 8:03-cv-544, 2005 WL 3087864, *7 (M.D. Fla. Nov. 16, 2005).

Rule 59(e) "affords the Court discretion to reconsider an order." *Kornacki v. S. Farm Bureau Life Ins. Co.*, No. 3:14-cv-784, 2015 WL 7756137, *1 (M.D. Fla. Dec. 1, 2015). A

2

Rule 59(e) motion may be granted on the grounds of "manifest errors of law or fact." *Arthur*

*v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007) (citation omitted).

ARGUMENT

**I.     The Court Should Grant CalAmp's Renewed Motion For JMOL That It Does Not Infringe The Asserted Patents.**

An overarching issue on noninfringement is the fact that the verdict form asked only

about, and the jury therefore could find only, direct infringement under 35 U.S.C. § 271(a).

The verdict form asked whether "any of the accused CalAmp devices infringed." Dkt. 144 at

2-6. This question necessarily went only to direct infringement. Because "inducement

requires intent," "a device cannot induce infringement." *Wordtech Sys., Inc. v. Integrated*

*Networks Sols., Inc.*, 609 F.3d 1308, 1316 (Fed. Cir. 2010).

Consistent with this, the jury instructions explained that whether the "products"

infringe was a matter of direct, literal infringement. *See* Dkt. 143 at 12 ("direct infringement

results if the accused product is covered by at least one claim of the patent"), at 14 ("A patent

claim is literally infringed only if CalAmp's products include each and every element in that

patent claim."). The jury was instructed that induced infringement is a separate issue that

requires additional findings regarding knowledge and intent, none of which appeared on the

verdict form. *Id.* at 15-16. Accordingly, the jury's verdict can be sustained only if the

evidence is sufficient to support a verdict for **direct** infringement.

**A.     CalAmp's Accused Devices Do Not Meet The "Transmitter And A Receiver" Limitation Of The '876 And '885 Patents.**

All asserted claims of the '876 and '885 patents require "a transmitter and a receiver

**for receiving signals from said transmitter**." Ex. 1 at claim 1; Ex. 2 at claim 1 (emphasis

3

added).  At trial, Omega's expert Mr. McAlexander identified a transmitter and a receiver which he said were on the same chip of the LMU.  *E.g.*, Dkt. 180 at 62:16-23.  But he did not testify that the receiver on the chip receives signals from the transmitter on the same chip; nor is there any evidence that this occurs.

Mr. McAlexander tried to inject a new theory at trial by pointing to "a transmitter receiver that's associated with a server that receives and communicates with it" in combination with the accused devices.  *Id.* at 62:24-63:5.  But this cannot support the verdict because the jury found that the infringing product was the LMU itself, not the LMU in combination with other components such as a server.  *See* Dkt. 144 at 1-6.

Nor can such a theory support a finding of direct infringement by CalAmp in any event.  At Omega's urging, the Court adopted a construction of transmitter and receiver requiring RF (radio frequency) communication.  *See* Dkt. 50 at 6-9.  CalAmp's server is located in a datacenter that has no direct RF connection to the accused devices; there is no RF transmitter/receiver in CalAmp's server.  *See* Ex. 3, PTX 104 at A-9.  The accused devices use cellular technology and therefore have an RF connection to a cell tower owned by a wireless communication provider, which then communicates with CalAmp's server through the Internet.  *Id.*; Dkt. 181 at 46:20-25.  Because CalAmp does not make, use, sell, offer to sell, or import the transmitter/receiver on the cell tower, CalAmp does not itself make, use, sell, offer to sell, or import the entire combination of components required to satisfy the claims under Omega's theory.  *See, e.g., Centillion Data Sys., LLC v. Qwest Commc'ns, Int'l, Inc.*, 631 F.3d 1279, 1286 (Fed. Cir. 2011) ("use" requires one to "put the claimed invention into service, *i.e.*, control the system and obtain benefit from it….

4

Supplying the software for the customer to use is not the same as using the system"); *id.* at 1288 ("mak[ing]" requires one to "combine all of the claim elements"; it is not direct infringement where "[t]he customer, not [defendant], completes the system").  The only possible claim against CalAmp would be for indirect infringement.  But the jury found only direct infringement, and that verdict must be overturned.

**B.    The '876 And '885 Patents Are Not Infringed By CalAmp Because They Require Connection To A Customer's Vehicle.**

The asserted claims of the '876 patent also require that the multi-vehicle compatible controller be "at the vehicle" and "cooperating with said transmitter and receiver."  Ex. 1 at Claim 1.  The asserted claims of the '885 patent similarly require that the multi-vehicle compatible controller be "cooperating with said transmitter and said receiver."  Ex. 2 at claim 1.  The accused products are not "at the vehicle" when CalAmp makes, uses or sells them. The accused products also are not "cooperating" with any remote RF transmitter and receiver until they are turned on and put into operation by a customer, as Mr. McAlexander admitted at trial: "Is [the accused product] sitting here cooperating right now?  No."  Dkt. 180 at 132:23-24.  Mr. McAlexander further admitted that CalAmp, by selling the accused products, does not directly infringe these claims.  *Id.* at 133:22-23.  The evidence cannot support the jury's direct infringement verdict.

**C.    CalAmp's Accused Devices Do Not Meet The "Device Codes" Limitations Of The '278, '885, And '876 Patents.**

All asserted claims of the '278 and '885 patents and claim 12 of the '876 patent have specific requirements for "device codes."  The Court construed a "device code" to be a "[s]ignal **from** a vehicle device."  Dkt. 50 at 25 (emphasis added).

1.    **CalAmp's Accused Devices Do Not Have A "Corresponding Device Code" As Required By The '278 Patent.**

The asserted claims of the '278 patent require that the "multi-vehicle compatible controller" communicates with the vehicle device "using at least one corresponding vehicle device code." Ex. 4 at claim 1. The "corresponding vehicle device code" Mr. McAlexander pointed to at trial was the query sent by the LMU as part of the bus discovery process. Dkt. 181 at 92:2-94:9. This is not a signal sent by a vehicle device, as required by the Court's construction; rather, it is a signal sent only by the multi-vehicle controller. *Id.* at 94:14-15.

At the pre-verdict JMOL hearing, Omega argued that the accused LMU was a vehicle device and so signals from it qualify. This turns the claim language on its head. The claims of the '278 patent require that the multi-vehicle compatible controller (which Omega contends is the LMU) "be coupled to the vehicle data bus for communication thereover with at least one vehicle device." Ex. 4 at claim 1. It is nonsensical to say that the controller is a vehicle device that communicates with itself over the vehicle data bus. Omega sought a claim construction for "device codes" that would have allowed for a "[s]ignal to or from a vehicle device." Dkt. 50 at 15. The Court properly rejected this construction, because Omega did "not direct the Court to any intrinsic evidence to support its contention that a device code, or signal, travels both to and from a vehicle device." *Id.* at 17. Omega's arguments at trial were an improper end-run around the Court's claim construction.

2.    **CalAmp's Accused Devices Do Not "Determin[e] A Match Between A Read Device Code And The Stored Device Codes."**

The asserted claims of the '885 patent, and claim 12 of the '876 patent, require "storing a set of device codes for a given vehicle device for a plurality of different vehicles,"

"reading a device code from the data communications bus," and "determining a match between a read device code and the stored device codes."  For the stored device code that is purportedly matched to a read device code, Mr. McAlexander relied on the query that is sent out by the LMU as part of the bus discovery process.  Dkt. 181 at 36:11-38:14.  But again, this is not a "device code" because it is not a signal from a vehicle device.

Additionally, Mr. McAlexander's theory is that there is a "match" whenever the LMU receives a response to its query.  *See id.* at 45:6-13.  That, however, is not enough because the LMU does *not* look at the response device code and compare it to stored device codes to determine that there is match, as required.  *See, e.g.*, Ex. 2 at claim 1.  There is no comparison or matching performed at all, and certainly Omega established none at trial.

In its opinion on willfulness, the Court characterized the issue as "whether signals were stored on the accused devices."  Dkt. 206 at 16.  But that is not the only issue.  Under the express terms of the claims, the controller must also determine whether there is a match between any "read device code" and the "stored device code."  As Mr. Andrews explained at trial, this is not done.  *See* Dkt. 182 at 241:17-20 ("Q: How about reading a device code from the data communications bus?  A: For determining a match?  It does read device code data, but there's nothing stored to match it against.").  Because Omega never pointed to any stored device code (*i.e*., a signal from the vehicle device) against which the read device code is matched, the jury's infringement verdict is not supported by substantial evidence.

D.    **CalAmp's Accused Devices Do Not Read And Use Vehicle Speed Data From The Vehicle Bus As Required By The '727 Patent.**

All asserted claims of the '727 patent require "reading the data related to vehicle speed **from the vehicle data communications bus**, and determining when a vehicle speed

exceeds a speed threshold for a first time period and based thereon cooperating with [the] wireless communications device to send a remote vehicle speed exceeded notification." Ex. 5 at claim 1 (emphasis added).  The evidence at trial showed that the default "speed above a threshold" function, which is what is available in the accused products by default, uses only GPS speed (which does not infringe), rather than vehicle bus speed (as required by the claims). Dkt. 182 at 133:4-17; Ex. 6, 8/18/14 Hergesheimer Dep. at 49:8-21; Ex. 7, 3/12/15 Eiberger Dep. at 54:21-55:14.

In addition to the default functionality (using GPS speed) provided by CalAmp, customers can modify the accused products and script their own speed-exceeded notification using bus speed.  Ex. 6, 8/18/14 Hergesheimer Dep. at 49:16-21; Ex. 7, 3/12/15 Eiberger Dep. at 55:16-56:9.  As part of an interrogatory response, CalAmp provided a list of customer scripts that saved vehicle bus speed in an accumulator, a prerequisite **if** a customer wished to write a custom script that would use vehicle bus speed for a speed-exceeded notification.  *See* Ex. 7, 3/12/15 Eiberger Dep. at 55:16-24, 57:13-58:2.  However, as explained in both CalAmp's interrogatory response and in deposition testimony, the scripts listed in the response did **not** necessarily cause a speed-exceeded notification.  Ex. 8, PTX 161 at 5; Ex. 7, 3/12/15 Eiberger Dep. at 57:22-58:2.  The only way to determine which scripts, if any, actually used the vehicle bus speed for a speed-exceeded notification would be to examine each script individually (which Omega never did).  Ex. 7, 3/12/15 Eiberger Dep. at 78:21-79:12.  And even this over-inclusive list represented only 5 percent of the accused products—a fact Omega did not dispute.  Dkt. 181 at 52:1-18.  The remainder necessarily used the default GPS-based speed-above-threshold function.  *Id.*

The Court discounted the testimony regarding the use of GPS speed, apparently due to confusion between the functionality provided **by default** in CalAmp's accused devices and the functionality an individual customer could provide through scripting.  Dkt. 206 at 9-11. CalAmp's admission that a small number of customers could theoretically have programmed a custom speed-exceeded notification (although there was no evidence that any customer actually did so) is not inconsistent with CalAmp's testimony that the default speed-exceeded functionality present in all accused products uses only GPS speed.

"In order to prove direct infringement, a patentee must either point to specific instances of direct infringement or show that the accused device necessarily infringes the patent in suit." *ACCO Brands, Inc. v. ABA Locks Mfr. Co.*, 501 F.3d 1307, 1313 (Fed. Cir. 2007); *see also Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1329 (Fed. Cir. 2010).  Because the evidence was undisputed that the **default** speed above threshold function uses only GPS speed, the accused products do not necessarily infringe.  And, Omega did not identify a single script that actually uses vehicle bus speed to generate a speed exceeded notification. Omega therefore failed to meet its burden to prove specific instances of direct infringement.

Moreover, even if a customer had modified an accused product to use bus speed data for a vehicle speed-exceeded notification (and there is no evidence of that), that would not be infringement *by CalAmp*.  It would be the customer who made and used the allegedly infringing device—CalAmp provides only a non-infringing "speed above threshold" function that uses GPS speed.[1]  Dkt. 182 at 247:10-248:8; Ex. 7, 3/12/15 Eiberger Dep. 55:7-56:9.

---

[1] Although there was evidence at trial that CalAmp loads scripts for **some** customers, it is undisputed that CalAmp does not do so for all customers.  *See* Ex. 9, 4/22/15 Hergesheimer Dp. at 20:21-21:2 (CalAmp loads scripts for 50%-75% of customers).  There was no

CalAmp could be liable only under an indirect infringement theory, but the jury was not asked to and did not find that CalAmp induced or contributed to another's direct infringement.  *See* Dkt. 144.  Indirect infringement also requires proof of specific instances of direct infringement, which Omega did not provide.  *See Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1274 (Fed. Cir. 2004) ("A defendant's liability for indirect infringement must relate to the identified instances of direct infringement.").

Omega's expert confused the jury with claim construction positions that were never previously raised.  Mr. McAlexander contended that the "data related to vehicle speed from the vehicle data communications bus" in claim 1 does not have to be the data used in "determining when a vehicle speed exceeds a speed threshold."  *See* Dkt. 181 at 52:19-53:25.  Not only is this belied by the claim language, but it is contrary to Mr. McAlexander's previously disclosed opinion that the speed-above-threshold determination must be made using speed data from the vehicle bus.  Ex. 3, PTX 104 at D-6 (arguing that the LMU-3000 used the "bus speed" to generate the event report).  Mr. McAlexander's newly-hatched theory that using GPS speed would infringe the claims is erroneous as a matter of law.  At a minimum, CalAmp is entitled to a new trial because it is impossible to know if the verdict was based on Mr. McAlexander's incorrect claim construction theory.

**E.    CalAmp's Accused Devices Do Not Use "Command Signals" As Required By All Asserted Claims Of The '876 Patent.**

All asserted claims of the '876 patent require that the multi-vehicle compatible controller generates "at least one set of command signals."  Dkt. 1 at claim 1.  The Court construed "command signal" to mean a "[s]ignal generated on the data communications bus

---

evidence that CalAmp assisted with any potentially infringing script.

**for operating** a vehicle device."  Dkt. 50 at 25 (emphasis added).

The requirement that a "command" must cause the operation of a vehicle device is why passive products, like the accused products, which merely request and receive data, cannot infringe.  This is consistent with the way "command signal" is used in the specification of the '876 patent.  *See* Ex. 1 at 3:34-45 (exemplary command signals include "operating the alarm indicating device," "operating the door lock actuators," and operating "a device relating to starting a vehicle engine"), at 8:36 ("an unlock all vehicle doors to be commanded").  This is also consistent with the extrinsic evidence: the then-current standard[2] which distinguished between queries and commands.  Dkt. 182 at 240:1-6; Dkt. 180 at 125:4-17.

CalAmp's products merely request and receive data.  Dkt. 182 at 54:8-55:11.  They therefore do not infringe because they do not send signals to operate a vehicle device.  *See* Dkt. 182 at 239:14-240:11.  Omega's infringement theory is inconsistent with the Court's claim construction, the patent specification, and extrinsic evidence that puts the construction in perspective.

     **F.**    **CalAmp's Accused Devices Do Not Have A "Controller" That Performs "Control Functions" As Required By All Asserted Patents.**

All of the asserted claims require either a "controller" or a "multi-vehicle compatible controller."  These terms were construed to require "[e]lectronic circuitry that performs one or more **control functions**."  Dkt. 50 at 24 (emphasis added).  CalAmp urged the Court to construe "function" as "[a]n operation of a vehicle device, such as remote starting the engine,

---

[2] Omega's expert admitted that a person of ordinary skill in the art would have been aware of this standard.  Dkt. 180 at 126:15-127:4.

remotely unlocking the vehicle doors, or changing the mode of a security system between armed and disarmed." Dkt. 206 at 14. The Court did not reach this issue until after trial, and the Court's new construction is contrary to the patent specifications as previously detailed. *See* Dkt. 169 at 11-13.

Based on a proper claim construction, CalAmp's accused products, which only send and receive data, cannot meet these limitations because they lack a "controller" that performs "control functions." Ex. 9, 4/22/15 Hergesheimer Dep. 42:5-7, 10-11 (testifying that LMU30000 performs a "query process," not a control function); Dkt. 182 at 238:3-12, 238:25-239:6, 241:5-12, 245:1-4.[3]

## II.   The Court Should Grant CalAmp's Renewed Motion For JMOL Of Invalidity.

### A.   CalAmp Presented Unrebutted Clear And Convincing Evidence That Each Of The Patents-in-Suit Is Invalid As Obvious.

For each asserted patent, CalAmp relied on two prior art combinations to show that the relevant claims would have been obvious to one of ordinary skill. *See* Dkt. 182 at 223:3-227:12, 227:13-232:4, 253:19-22, 253:23-24, 257:1-4, 257:5-8, 267:9-268:8, 269:2-6; Dkt. 183 at 80:1-5. For each combination, Mr. Andrews explained why a person of ordinary skill

---

[3] Mr. Andrews' statements cited in the Court's enhancement order are not to the contrary. In the first passage, Mr. Andrews states only that querying the ECU means "[y]ou're asking it for information. It's providing it back, yes." Dkt. 206 at 14-15 (citing Dkt. 183 at 118:9-24). He did not say that this is a "control function." *Id.* In the second passage, Mr. Andrews responded that he "agree[d] with" Mr. Hergesheimer. *Id.* at 120:14-20. Mr. Hergesheimer had testified that he would **not** consider a query process to be a control function, but allowed that someone else might conflate the two. Ex. 9, 4/22/15 Hergesheimer Dep. at 42:10-19. Given that claim terms are to be given their **ordinary** meaning as understood by one of skill in the art consistent with the specification of the patent (not a theoretically possible meaning independent of the patents), Mr. Hergeisehemer's testimony supports Mr. Andrews' opinion that a query is not a control function. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (*en banc*).

would have looked to the J1978 standard to solve the problem of multi-vehicle compatibility (and thus combine the references).  Dkt. 182 at 202:8-24.  He explained that the J1978 standard was mandatory for automobiles sold in the U.S. at the time of the invention and was thus well known to those of ordinary skill.  *Id.* at 193:9-20.  He further explained that when the primary prior art references refer to connecting the device to a vehicle data bus, they necessarily teach accomplishing that connection using the mandatory J1978 and J1979 standards.  *Id.* at 202:4-17.  Mr. Andrews used the standards to explain how a person of ordinary skill would have understood the disclosures of the primary references—no modification of the primary references would have been necessary.  Even for the Spaur '074 reference, which predates the relevant version of the J1978 standard, by the time of the asserted patents, it would have been obvious to connect the Spaur '074 device with the by-then mandatory J1978 standard.  *Id.* at 216:16-217:7.

The fact that the J1978 standard relates to a scan tool, rather than a device with all of the claimed functionality of the patents-in-suit, is of no moment.  "Common sense teaches … that familiar items may have obvious uses beyond their primary purposes, and in many cases a person of ordinary skill will be able to fit the teachings of multiple patents [or references] together like pieces of a puzzle….  A person of ordinary skill is also a person of ordinary creativity, not an automaton."  *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 420-21 (2007).

Moreover, Mr. Andrews testified about his personal experience combining an existing vehicle device with the SAE standards in order to make a multi-vehicle compatible device.  Dkt. 182 at 179:19-182:14.  Mr. Andrews was not relying on a hindsight reconstruction to say that a person of ordinary skill would have looked to the SAE standards to enable multi-

13

vehicle compatibility—he was speaking from contemporaneous personal experience.[4]

Omega did not dispute that each prior art combination presented at trial disclosed the claim limitations. Dkt. 183 at 89:1-180:14. Nor did Omega's expert Mr. McAlexander dispute that one of ordinary skill in the art would have been aware of the SAE standards. Dkt. 180 at 126:15-127:4.[5] Mr. McAlexander offered an *ipse dixit* assertion that the patents are valid and that secondary considerations supported nonobviousness. Dkt. 183 at 227:16-23, 228:17-23. But he offered no testimony showing a nexus between the unidentified secondary considerations and the patent claims. *Id.* at 227:1-229:8. Mr. McAlexander's conclusory opinions cannot provide substantial evidence in support of the jury's verdict. *See Lemelson v. United States*, 752 F.2d 1538, 1551 (Fed. Cir. 1985) ("We give no weight to the series of conclusory statements offered by [an] expert witness.").

In light of the unrebutted testimony of Mr. Andrews, the jury's nonobviousness verdict is not supported by substantial evidence. The *prima facie* case of obviousness was undisputed. And, while the Court has indicated that Mr. Andrews did not sufficiently articulate why one of skill would combine the J1978 standard with the other prior art, no such testimony is required where, as here, it is self-evident why one of ordinary skill would do so. *See Wyers v. Master Lock Co.*, 616 F.3d 1231, 1239-40 (Fed. Cir. 2010) ("[T]he legal

---

[4] Accordingly, the Court erred in holding that Mr. Andrews "failed to articulate the motive for one of ordinary skill in the art to combine these references" (Dkt. 206 at 17).

[5] The Court stated that it is "interesting[]" that Mr. Chen was unaware of J1978. Dkt. 206 at 17, n.20. But "[o]bviousness is determined from the vantage point of a hypothetical person having ordinary skill in the art … [which] presumes that all prior art references in the field of the invention are available to this hypothetical skilled artisan." *In re Rouffet*, 149 F.3d 1350, 1357 (Fed. Cir. 1998). The fact that one individual was not familiar with the relevant SAE standards is immaterial, particularly in light of Omega's expert's admission that the **hypothetical** person of ordinary skill would have been aware of the standards.

determination of obviousness may include recourse to logic, judgment, and common sense, in lieu of expert testimony … the ultimate inference as to the existence of a motivation to combine references may boil down to a question of 'common sense,' appropriate for resolution on summary judgment or JMOL.").  The Omega patents are simply a "combination of familiar elements according to known methods" which "does no more than yield predictable results," which "is likely to be obvious."  *KSR*, 550 U.S. at 416.  Mr. Andrews' testimony that the J1978 standard solved the problem of multi-vehicle compatibility and was well-known in the field demonstrates that this is "a technique [that] has been used to improve one device" where "a person of ordinary skill in the art would recognize that it would improve similar devices in the same way," and therefore "using the technique is obvious."  *Id.* at 417.  Omega presented no countervailing testimony.

**B.**      **The Jury's Verdict Finding Secondary Considerations Is Unsupported.**

The jury found three secondary considerations of nonobviousness—commercial success, copying, and licensing by others.  Dkt. 144 at 9.  None of these findings is supported by substantial evidence.

It is well settled that there must be "a nexus between the merits of the claimed invention and the proffered secondary considerations."  *Ashland Oil, Inc. v. Delta Resins & Refractories, Inc.*, 776 F.2d 281, 305 n.42 (Fed. Cir. 1985).  "The burden of proof as to this connection or nexus resides with the patentee."  *Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*, 851 F.2d 1387, 1392 (Fed. Cir. 1988).  For example, even if a license purports to cover an asserted patent, the patentee still must show "a nexus between the merits of the invention and the licenses of record."  *In re GPAC Inc.*, 57 F.3d 1573, 1580 (Fed. Cir.

1995) (citation omitted).  Omega never even attempted to carry this burden.  It presented no evidence that any of its licensed products actually practice any of the asserted patents.  Although Omega's lay witnesses referenced a prior case involving DEI (Dkt. 179 at 63:15-66:13), there was no testimony linking any DEI products or their purported commercial success to any of the asserted claims.  Nor did Omega present any evidence linking any commercial success to the claimed features rather than the prior art.  Accordingly, the jury's findings on the commercial success and licensing secondary considerations are not supported by substantial evidence.[6]

The jury's copying finding is also unsupported by substantial evidence.  Omega's "copying" evidence was merely that CalAmp had access to the patents before it launched the accused products.  *See* Dkt. 148 at 5-6.  But "[n]ot every competing product that arguably falls within the scope of a patent is evidence of copying.  Otherwise every infringement suit would automatically confirm the nonobviousness of the patent."  *Iron Grip Barbell Co. v. USA Sports, Inc.*, 392 F.3d 1317, 1325 (Fed. Cir. 2004).  Copying "requires the replication of a specific product."  *Id.*; *see also Tokai Corp. v. Easton Enters., Inc.*, 632 F.3d 1358, 1370 (Fed. Cir. 2011) ("Copying requires evidence of efforts to replicate a specific product.") (internal quotation marks and citation omitted).  There was no evidence that CalAmp copied a specific product or embodiment.

Even if Omega had presented proper evidence of secondary considerations (and it did not), CalAmp's strong (and unrebutted) *prima facie* case of obviousness is still sufficient to show invalidity.  "[W]here a claimed invention represents no more than the predictable use

---

[6] Notably, in the reexamination of the '885 patent, the Patent Office has agreed that Omega has not demonstrated a nexus to any evidence of secondary considerations. Ex. 10 at 15.

of prior art elements according to established functions, as here, evidence of secondary

indicia are frequently deemed inadequate to establish non-obviousness." *Ohio Willow Wood*

*Co. v. Alps S., LLC*, 735 F.3d 1333, 1344 (Fed. Cir. 2013); *see also Wyers*, 616 F.3d at 1246

("secondary considerations of nonobviousness … simply cannot overcome a strong prima

facie case of obviousness").

At a minimum, if JMOL is granted regarding any of the jury's secondary

considerations findings (as it must be given the absence of a nexus), CalAmp is entitled to a

new trial on obviousness.  The jury's verdict finding insufficient proof of obviousness is

necessarily tainted by its erroneous secondary considerations findings.

## III.  The Court Should Grant CalAmp's Renewed Motion for JMOL Of No Willfulness.

The Supreme Court's decision in *Halo Electronics, Inc. v. Pulse Electronics, Inc.*,

136 S. Ct. 1923 (2016), removed the objective prong from the former *Seagate* test for

willfulness, but "did not disturb the substantive standard for the second prong of *Seagate*,

subjective willfulness," which requires "proof that the defendant acted despite a risk of

infringement that was 'either known or so obvious that it should have been known to the

accused infringer.'" *WesternGeco LLC v. ION Geophysical Corp.*, 837 F.3d 1358, 1362 (Fed.

Cir. 2016) (quoting *Halo*, 136 S. Ct. at 1930).  This is an issue for a jury to resolve in the first

instance.  *See WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016) ("We do not

interpret *Halo* as changing the established law that the factual components of the willfulness

question should be resolved by the jury.").  A good faith belief of non-infringement or

invalidity based on the competent opinion of counsel is a defense to willfulness.  *See Braun*

*Inc. v. Dynamics Corp. of Am.*, 975 F.2d 815, 822 (Fed. Cir. 1992) ("On-going consultation

with a patent lawyer is highly probative evidence of good faith."); *LoggerHead Tools, LLC v. Sears Holdings Corp.*, No. 12-cv-9033, 2016 WL 5112017, *4 (N.D. Ill. Sept. 20, 2016) (granting summary judgment of no willfulness where "counsel issued a noninfringement opinion before this litigation").

CalAmp waived privilege and attempted to present such a defense.  The evidence showed that before making its accused devices, CalAmp conducted an extensive internal investigation regarding the entire intellectual property landscape surrounding its products. Dkt. 182 at 55:21-56:8, 56:15-57:8, 57:15-24.  As part of that analysis, CalAmp reviewed Omega's patents and sought the advice of outside counsel regarding them.  *Id.* at 61:13-17; 114:7-115:9.  Through that process, CalAmp formed the belief that the patents that had then issued (the '885, '876 and '727 patents) were invalid and/or that CalAmp's planned products would not infringe.  Dkt. 182 at 115:10-117:17, 126:19-128:9, 150:24-153:23, 154:11-156:21.  When the '278 patent issued, CalAmp relied on counsel's opinion that the '278 patent was invalid as well.  *Id.* at 152:16-20, 157:1-6.

The Court stated that it "is unaware of the substance of the verbal opinions allegedly offered by Mr. Bailey in 2010 prior to the launch of the accused products."  Dkt. 206 at 12, n.14.  But that is because the Court, at Omega's urging, precluded Mr. Bailey or any CalAmp witness from testifying about the specific advice he provided.  Having successfully blocked this evidence, Omega cannot contend that the advice was inadequate or that CalAmp's reliance upon it was unreasonable.

Surprisingly, the Court suggested that there is insufficient evidence that the opinions of counsel were actually rendered prior to CalAmp's launch of its products.  Dkt. 206 at 12,

18.  However, the oral opinions are documented by contemporaneous correspondence between CalAmp and Omega.  Specifically, CalAmp's Mr. Chen told Omega's Mr. Flick in a December 29, 2010 email that CalAmp did not believe that it infringed Omega's patents because it used prior art bus discovery that "was on sale and publicly used more than a year before the filing date of a[n Omega] patent describing a similar system."  Ex. 11, PTX 38 at 2.  Mr. Chen also told Mr. Flick that CalAmp did not believe it would infringe because "we do not enable the LMU to control devices via the OBD-II bus and would only allow the proposed product to collect data via the OBD-II bus."  *Id.*  Of course, there would be more detail on the oral opinions if Omega had not persuaded the Court to preclude such testimony.  Regardless, not even Omega suggested at trial that counsel had not provided the oral opinions.

That CalAmp initially received oral, rather than written, opinions is neither surprising nor legally relevant.  This is a crowded field of art, and CalAmp reviewed a large number of patents before launching its products.  It would have been unduly expensive to commission formal written opinions on all such patents.  *See* Dkt. 182 at 57:25-58:6 (CalAmp reviewed over 300 patents), 61:18-62:1 (prior art search involved IP holders other than Omega), 151:16-22 (CalAmp's counsel "reviewed literally hundreds of patents").  And reliance on oral opinions is a defense to willfulness.  *Radio Steel & Mfg. Co. v. MTD Prods., Inc.*, 788 F.2d 1554, 1559 (Fed. Cir. 1986).

Nor does an email from Mr. Chen to CalAmp's counsel in June 2013 call into question CalAmp's reliance on counsel.  This email noted, among other things, that the '727 patent can be avoided by using GPS speed.  Dkt. 206 at 12.  The Court opined that Mr. Chen

19

would not be noting this if counsel had made the same point earlier.  However, the email specifically mentions that the Omega patents "have been reviewed already by us."  Ex. 12, PTX 47 at 1.  The email further indicates what had earlier been discussed with counsel regarding the '727 patent—that the use of GPS speed avoids infringement.  Nothing in this email suggests that Mr. Chen came up with this noninfringement defense on his own, or that the defense was not recognized earlier.  Additionally, the oral opinion of counsel regarding the '727 patent that was later memorialized in a written opinion addressed **invalidity**, not infringement.  *See* Dkt. 182 at 156:13-21.  So, even if the noninfringement defense regarding GPS speed was new as of 2013 (and it was not), that hardly means that counsel did not provide an **invalidity** opinion earlier.

The statement regarding the '278 patent being "harder to avoid" in the same email is likewise consistent with CalAmp's reliance on counsel.  The Court thought the statement contradicted CalAmp's testimony that it had "vetted the accused devices and the Omega patents three years earlier."  Dkt. 206 at 12.  However, CalAmp's witnesses testified, consistent with the email, that they had not reviewed the '278 patent along with the others because the '278 patent *had not yet issued* at the time of the 2010 review; CalAmp reviewed the '278 patent when Omega brought it to CalAmp's attention in 2013.  Dkt. 182 at 152:3-8, 16-20.  Shortly thereafter, CalAmp obtained an oral opinion that the '278 patent is invalid.  *Id.* at 157:2-6.  Nothing in the 2013 email undercuts CalAmp's testimony as to when it obtained oral opinions of counsel.[7]

---

[7] The Court also expressed doubt that CalAmp had knowledge of an invalidity defense because Mr. Chen filed a patent application without disclosing the prior art CalAmp asserted against Omega.  Dkt. 206 at 18-19, n.21.  However, Mr. Chen's patent application disclosed

The Court also failed to acknowledge the affirmative steps CalAmp took to avoid infringement. CalAmp, based on counsel's advice, determined that the patents all require performing a control function. This is also what CalAmp understood Omega contended was covered by the patents based on discussions with Omega. Dkt. 182 at 52:17-53:1, 53:6-20. To ensure that it would not infringe, CalAmp designed its products only to read data. Dkt. 182 at 54:8-55:16, 66:21-67:6. Although the jury concluded that this did not avoid infringement (based at least in part on claim construction errors as explained above), that does not change the undisputed fact that CalAmp "made specific changes deemed adequate by counsel to avoid infringement."[8] *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 828-30 (Fed. Cir. 1992) (concluding that there was insufficient evidence of willfulness). Thus, no reasonable jury could find that CalAmp did not rely on the good faith advice of counsel.

The Court also relied on CalAmp's purported conduct regarding prior litigation that "pertained to patents other than those at issue in the instant litigation." Dkt. 206 at 7, n.8. This conduct cannot support a finding that CalAmp acted willfully with regard to the asserted patents, and it should not have been admitted in evidence. Given that the Court relied on this irrelevant evidence, the jury undoubtedly was prejudiced by it as well.

---

several of Omega's patents from the same family as the asserted Omega patents, and these Omega patents disclosed the same alleged invention as the prior art CalAmp relied on from its opinions of counsel. *See* Ex. 13, PTX 14 at 1-2. PTO procedures do not require disclosure of cumulative art, *see* 37 C.F.R. 1.56(b), so CalAmp not citing the prior art from this case says nothing about whether CalAmp had knowledge of its invalidity defense at the time Mr. Chen filed a patent application.

[8] The Court's observation that this defense is "conspicuously absent from Mr. Andrews' initial expert report" is misplaced. Dkt. 206 at 15. Mr. Andrews' initial report addressed invalidity; Mr. Andrews was not required to disclose this noninfringement opinion until his rebuttal report. Moreover, far from emerging "late in litigation," the opinion was relayed to Mr. Flick in late 2010, before CalAmp's products were launched. Ex. 11, PTX 38 at 2.

The Court also relied heavily on purported misrepresentations in litigation regarding the operation of the accused products as it relates to the '727 patent.  Dkt. 206 at 8-10.  As explained above in Section I.D, however, CalAmp's witnesses testified truthfully and honestly; there were no misrepresentations.  Moreover, alleged (and in fact, nonexistent) litigation misconduct has nothing to do with the subjective willfulness inquiry, which focuses on CalAmp's state of mind before litigation.  *See Halo*, 136 S. Ct. at 1933 (culpability is "measured against the knowledge of the actor at the time of the challenged conduct").

For all of these reasons no reasonable jury could have found willfulness; at a minimum, a new trial should be ordered as explained further below.

**IV.    Damages Should Not Be Enhanced.**

Even if the willfulness finding stands, the Court still should alter its judgment and disallow enhanced damages.  "[A] finding of willful infringement does not mandate that damages be enhanced," much less enhanced by a multiple of three.  *Read*, 970 F.2d at 826.  And here, none of the factors that inform this analysis support enhancement at all.  *Id.* at 826-27 (setting forth factors).

1.    **CalAmp Did Not Copy**.  The Court found "willful copying of Omega's invention."  Dkt. 206 at 11.  However, as discussed above with regard to obviousness, "copying requires the replication of a specific product."  *Iron Grip*, 392 F.3d at 1325; *see also, e.g.*, *Read*, 970 F.2d at 827 & n.7 (copying encompasses "copying the commercial embodiment, not merely the elements of a patent claim").  Omega points to no evidence of copying because none occurred.

2.    **CalAmp Investigated and Formed a Good Faith Belief That It Could**

**Proceed**.  As discussed above with regard to willfulness, the evidence shows that CalAmp

had a good faith belief that it did not infringe any valid Omega patent.

       3.        **No Litigation Misconduct**.  Omega admits that there was no litigation

misconduct.  Dkt. 148 at 8.  This factor thus weighs against enhancement.[9]

       4.        **CalAmp's Size and Financial Condition**.  The decision to enhance damages

was based on an erroneous finding that CalAmp had "over $75 million dollars [sic] in

earnings last year."  Dkt. 206 at 19.  CalAmp's 2016 net income was only $16,940,000.  Ex.

14, 2016 10K at 20.  The enhanced damages therefore represent a significant financial burden

to CalAmp.  CalAmp supports hundreds of employees, and numerous parts of its business

that are not at issue in this case would be unduly prejudiced by enhanced damages.  *See* Dkt.

170, Ex. 20, Gower Decl. ¶¶ 5, 10.  This factor, therefore, does not favor enhancement.

       5.        **The Liability Case Was Close**.  At the hearing before judgment was entered,

CalAmp explained each of the non-infringement grounds discussed above, but the Court did

not address most of them in its order.  CalAmp also explained why Omega's patents are

invalid, including why there was a motivation to combine prior art, but the Court did not

address those arguments either.[10]  The mere fact that the jury rejected CalAmp's defenses

---

[9] Omega's admission that no litigation conduct took place also undercuts the Court's
conclusion that CalAmp's witnesses engaged in misrepresentations at trial with regard to the
accused products' use of GPS speed and that CalAmp did not actually receive oral opinions
of counsel.  The Court should at least reconsider enhancement in light of these factual errors.

[10] The Court dismissed the opinions of counsel because they supposedly did not address
motivation to combine the prior art with the SAE standards. Dkt. 206 at 19, n.22. However,
the '885 opinion does address this. Ex. 15, DTX 73 at 17-20, 28-29. And the '278 and '727
opinions were not based on the SAE standards, but they address motivation to combine for
the references they discuss. Ex. 16, DTX 74 at 20-23; Ex. 17, DTX 75 at 19-22. The '876
opinion was based on non-infringement, for which motivation to combine is irrelevant.

does not mean that the issues were not close, as the Court's order seems to imply.

Moreover, recent developments in the PTO underscore the closeness of the case, and the objective reasonableness of CalAmp's invalidity defenses.  The PTO has issued non-final office actions rejecting all of the asserted claims in all of the asserted patents.  Exs. 10, 18-20.  Indeed, in the reexamination of the '727 patent, which the Court did not consider in its order, Omega has amended or cancelled each of the asserted claims, implicitly acknowledging that the broadest claim was not patentable prior to being amended.  Ex. 21 at 2-4.  Although the reexaminations occurred after the litigation and thus do not, post-*Halo*, preclude a willfulness finding (Dkt. 206 at 18), even "[a]fter *Halo*, the objective reasonableness of the accused infringer's positions can still be relevant for the district court to consider when exercising its discretion" on whether to enhance damages.  *WesternGeco*, 837 F.3d at 1363.

6. **Duration of Alleged Infringement**.  The duration of alleged infringement was relatively short, with a few sales occurring in 2011, and the majority occurring in 2012 and later.  *See* Dkt. 154-1.  This factor, therefore, does not favor enhancement.

7. **CalAmp Attempted To Avoid Infringement**.  Rather than compete in certain markets, CalAmp elected not to control vehicle devices as required by all of the asserted claims.  CalAmp avoided alarm and remote start functions, or those Omega previously offered to license such as door lock control, opting for devices that only read data.  Dkt. 182 at 52:17-53:1, 54:1-55:16.  Given the steps CalAmp took to avoid infringement

prior to launching the accused products, enhancement is unwarranted.[11]

8.     **No Intent To Harm**.  CalAmp took affirmative steps to avoid infringing.
Moreover, CalAmp tried to reach a deal with Omega, but when CalAmp said it did not need
the door lock and remote start features, Omega changed what it claimed the patents covered.
Ex. 22, Chen Dep. 95:4-96:6.  None of CalAmp's actions evidences an intent to harm
Omega; this factor does not support enhancing damages.

9.     **No Concealment**.  As confirmed by Omega's motion for enhanced damages
(Dkt. 148 at 8), there is no contention that CalAmp concealed or misrepresented any
information during this litigation.  Purported misleading statements regarding a "black box"
predate this litigation and cannot support enhancement in this case.[12]  Dkt. 206 at 7.  Omega
was already compensated for the products allegedly at issue in that incident.  *Id*.  The
removal of certain information from CalAmp's website (which CalAmp was under no
obligation to provide on its website and provided in full in discovery) also does not support
an enhancement of damages.[13]

Indeed, far from concealing the operation of its products, before releasing the LMU-
3000, CalAmp told Omega what the product would do (read data), and explained the bus
discovery process it would follow.  Ex. 11, PTX 38.  Moreover, CalAmp preserved its

---

[11] The Court noted testimony from Mr. Hergesheimer that he did not design around the
Omega patents.  But that is because, as Mr. Chen testified, CalAmp did not believe its
products infringed any valid Omega patent.  Ex. 22, Chen Dep. at 95:23-96:1.

[12] Contrary to the Court's order (Dkt. 206 at 10), there was no testimony at trial in this case
claiming CalAmp sold only a black box.

[13] As the Court acknowledged at the May 2016 hearing, this cannot be interpreted as an
attempt to conceal information given that CalAmp knew information would be produced in
discovery.  Dkt. 196, 5/2/16 Tr. at 19:1-11.

records and cooperated at trial.  *See Read*, 970 F.2d at 827 (focusing for this factor on

whether the accused infringer preserved evidence).  This further demonstrates that CalAmp

did not act in "bad faith as to merit an increase in damages awarded."  *Id.* at 826 (citation

omitted).

**V.        This Is Not An Exceptional Case And No Attorneys' Fees Should Be Awarded.**

The Court awarded attorneys' fees on the same basis as enhanced damages.  Dkt. 206

at 20.  As explained above, the Court should conclude that there is no willful infringement

and that damages should not be enhanced.  For the same reasons, there is no basis for an

exceptional case finding or an award of attorneys' fees.  *See also* Dkt. 169 at 24.

**VI.       CalAmp Should Be Granted A New Trial**

**A.        CalAmp Should Be Granted A New Trial On Damages.**

To the extent that the jury's verdict is overturned with respect to the infringement or

validity of any of the patents in suit, CalAmp should be granted a new trial on damages.  *See*

*Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1310 (Fed. Cir. 2007) ("In a

situation—such as this one—where the jury rendered a single verdict on damages, without

breaking down the damages attributable to each patent, the normal rule would require a new

trial as to damages."); *Accentra, Inc. v. Staples, Inc.*, 500 F. App'x 922, 931 (Fed. Cir. 2013)

(non-precedential) ("Because we have vacated the judgment as to two of the three patents,

we believe that the proper course is to vacate the damages award in its entirety").  Indeed,

because Omega has now abandoned in the reexamination the broadest claim of the '727

patent that was tried to the jury, a new trial is warranted on that basis alone.[14]

CalAmp should also be granted a new trial for several additional reasons.  First, the proposed testimony of CalAmp's damages expert, Dr. DeForest McDuff, was erroneously excluded.  Dr. McDuff should have been permitted to testify, subject to cross-examination, for the reasons CalAmp previously explained when opposing Omega's *Daubert* motion.  *See* Dkt. 74.  Moreover, the Court erroneously excluded Dr. McDuff's opinions in their entirety (*see* Dkt. 117 at 27), despite only identifying criticisms of Dr. McDuff's affirmative calculation of what a reasonable royalty should be.  Dkt. 117 at 18-27.  Dr. McDuff's report also included opinions criticizing the opinions of Omega's damages expert Christian Tregillis.  Ex. 23, McDuff Rep. at 24-25, 28-32, 44.  In particular, Dr. McDuff explained why the license agreements relied on by Omega—which were the primary basis for Mr. Tregillis's royalty opinion—were not comparable to the license that would result from the hypothetical negotiation in this case.  CalAmp was prejudiced because it was precluded not only from presenting its own analysis of the appropriate royalty, but also from presenting its expert's criticisms of Omega's damages analysis.

Second, the non-comparable license agreements relied upon by Mr. Tregillis, and the damages opinion based thereon, were erroneously admitted.  *See* Dkt. 96 at 10-12 (objecting the admission of licenses).  As Dr. McDuff explained in his report, the licenses relied upon by Mr. Tregillis were to portfolios of patents that provided rights far beyond just the right to practice the patents-in-suit, including rights to foreign patents and patents on technology

---

[14] An important factor in the hypothetical negotiation used to determine a reasonable royalty is the ease of designing around the patent.  CalAmp should be permitted to demonstrate that the remaining, narrower claims are easier to design around.  The same is true if any other patent claims are found invalid or not infringed.

unrelated to the patents-in-suit and accused products.  Ex. 23, McDuff Rep. at 28-29, 31.

Many of the licenses also resulted from litigation settlements, and Omega's expert did not

even attempt to account for the differing circumstances.  *Id.* at 29-30; *see also Hanson v.*

*Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1078-79 (Fed. Cir. 1983) ("license fees

negotiated in the face of a threat of high litigation costs may be strongly influenced by a

desire to avoid full litigation") (citation omitted).  Many of the agreements were also based

on low sales volume, and there was no evidence of significant royalty payments.  Ex. 23,

McDuff Rep. at 30-31.  Accordingly, the license agreements cannot provide substantial

evidence to support the jury's damages award, and CalAmp should be granted a new trial on

damages.  *See Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009)

("licenses relied on by the patentee in providing damages [must be] sufficiently comparable

to the hypothetical license at issue in suit"); *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d

1292, 1317 (Fed. Cir. 2011) ("there must be a basis in fact to associate the royalty rates used

in prior licenses to the particular hypothetical negotiation at issue in the case").

Third, the jury awarded a royalty using the same methodology for all of the accused

products and all of the asserted patents.  With respect to the '727 patent, this award

improperly does not tie the damages to specific instances of direct infringement.  *See Lucent*,

580 F.3d at 1334 ("The damages award ought to be correlated, in some respect, to the extent

the infringing method is used by consumers."); *Dynacore*, 363 F.3d at 1274 ("Plaintiffs who

identify *individual* acts of direct infringement must restrict their theories of vicarious

liability—and tie their claims for damages or injunctive relief—to *the identified act*.").  As

discussed above, it was undisputed at trial that at least 95 percent of customers did not use an

infringing speed-exceeded notification that relied on bus speed.  Substantial evidence therefore cannot support the jury's award of full damages on 100 percent of the accused products for the '727 patent.

**B.     CalAmp Should Be Granted A New Trial On Willfulness.**

CalAmp's ability to present a willfulness defense at trial was significantly hampered by evidentiary rulings that precluded CalAmp from explaining the basis for its good faith belief that Omega's patents were invalid and/or not infringed.  First, the Court prevented Mr. Chen, who conducted CalAmp's investigation of the patent landscape prior to the launch of the accused products, from presenting the conclusions he reached, with the input of outside counsel (*i.e.*, that Omega's patents were invalid and/or not infringed and why).  *See, e.g.*, Dkt. 182 at 62:13-20, 87:7-16; Dkt. 126 at 5-6 (excluding Ex. 22, Chen Dep. at 103:23-104:1, 136:20-137:6, 141:12-15, 154:18-23, 173:4-14, 206:9-25).  The Court excluded this testimony because it was purportedly improper expert testimony.  But CalAmp did not present Mr. Chen to testify for the purpose of proving that the patents are actually invalid or not infringed.  The point of the testimony was to show that Mr. Chen and CalAmp had a good faith belief that the patents were invalid or not infringed.  The rules of evidence permit fact witnesses to testify regarding their personal knowledge and "permit[] even a lay witness to testify in the form of opinions or inferences drawn from her observations when testimony in that form will be helpful to the trier of fact."  *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 169 (1988).  And Mr. Chen's conclusions, which he presented to CalAmp's management (Dkt. 182 at 113:24-114:6), are highly relevant to the willfulness inquiry, which focuses on CalAmp's state of mind.  *See DR Sys., Inc. v. Eastman Kodak Co.*, No. 08-cv-669,

29

2009 WL 3756765, *12 (S.D. Cal. Nov. 9, 2009) (granting summary judgment of no willfulness based on testimony of fact witnesses who investigated the asserted patents and formed a good faith belief of noninfringement).  Without the ability to present Mr. Chen's conclusions, the jury was left with the incorrect impression that CalAmp conducted an extensive prior art search and **did not** form a belief that the patents are invalid or not infringed, as Omega stressed in its closing.  Dkt. 184, 2/24/16 at 33:18-20 ("We heard all about his big stack and his little stack.  Didn't hear any analysis of those patents.").

Second, the Court excluded as hearsay CalAmp's written opinions of counsel, which memorialized earlier oral opinions, and which CalAmp also relied on as part of the basis of its good faith belief.  Dkt. 182 at 118:9-124:24; Dkt. 126 at 5-6 (excluding Ex. 22, Chen Dep. at 165:2-20, 170:17-20).  The opinions were not hearsay because they were not offered to prove the truth of the matter asserted, *i.e.*, that the Omega patents are actually invalid or not infringed.  *See* Fed. R. Evid. 801(c)(2) (hearsay is a statement "a party offers in evidence to prove the truth of the matter asserted in the statement").  The opinions were offered to document the advice provided to CalAmp by its counsel, so that the jury could evaluate whether CalAmp could have formed a good faith belief that it did not infringe any valid Omega patent.  Their exclusion was therefore erroneous.[15]

The Court also precluded the attorney, David Bailey, who provided the oral and written opinions, from explaining the bases for those opinions.  Dkt. 182 at 155:1-14.

---

[15] Indeed, opinions of counsel are routinely admitted at trial on the issue of willfulness.  *See, e.g., Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 810 (Fed. Cir. 2007); *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 435 F.3d 1356, 1365 (Fed. Cir. 2006); *Harris Corp. v. Ericsson Inc.*, 417 F.3d 1241, 1259 (Fed. Cir. 2005).

Again, CalAmp did not offer Mr. Bailey as an expert on validity or infringement, but to show CalAmp's state of mind by revealing the advice CalAmp was given.  As with the exclusion of Mr. Chen's testimony, the limitations on Mr. Bailey's testimony meant that the jury was left with the incorrect impression that CalAmp had been given only conclusory opinions with no explanation, which would be insufficient to support a good faith belief.

Although the Court may have considered the written opinions of counsel when it awarded enhanced damages, that is no substitute for having the jury consider the opinions when deciding the threshold issue of willfulness.  Willfulness is a question of fact, which must be determined by the jury.  *See WBIP*, 829 F.3d at 1341.  CalAmp was prejudiced by the erroneous exclusion of the key evidence underlying its defense to willfulness, and therefore should be granted a new trial.

In addition, to the extent that the jury's verdict on infringement or validity for any of the patents-in-suit is vacated or overturned, CalAmp should be granted a new trial on willfulness, and the Court's award of enhanced damages and attorneys' fees should be set aside.  If Omega's accusations are not shown to be meritorious with respect to some of the patent claims, that bears on the question whether CalAmp acted in good faith regarding the remaining patent claims.  CalAmp should at least be given a chance to present its willfulness defense to a jury that does not have an erroneous view of which Omega patents are valid and infringed.  And, because Omega has now abandoned the broadest claim of the '727 patent in reexamination, a new trial is warranted on that basis alone.

## C.     Erroneous Claim Construction Rulings Require A New Trial.

The Court did not adopt CalAmp's proposed constructions of "transmitter"/

"receiver," "data communication bus"/ "vehicle data communication bus"/ "vehicle data bus," "vehicle device," "command signal," "device code," "function," "remote vehicle speed exceeded notification," "downloading interface," and "enabling data."  Dkt. 50.  For the reasons explained in CalAmp's Markman briefing (Dkt. 39; Dkt. 41), CalAmp's constructions should have been adopted, and CalAmp should be granted a new trial under proper claim constructions.

In addition, once it became clear that the parties disputed the meaning of "control function," which appears in the Court's construction of "controller," the Court should have construed this term in accordance with CalAmp's proposed meaning, for the reasons discussed above in Section I.F.  The jury should not have decided this claim construction issue in the first instance.  *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008) ("When the parties present a fundament dispute regarding the scope of a claim term, it is the court's duty to resolve it."); *Eon Corp. IP Holdings LLC v. Silver Spring Networks, Inc.*, 815 F.3d 1314, 1319-20 (Fed. Cir. 2016).

**D.     Other Evidentiary Rulings Require A New Trial.**

There are numerous other instances where Omega was permitted to introduce additional prejudicial and irrelevant evidence, all of which should have been excluded.  A new trial is required on these bases as well.

For the reasons discussed above in Section II.B, as well as in CalAmp's Motion in Limine (Dkt. 96 at 6-12), Omega should have been precluded from presenting evidence of secondary considerations because it did not make a threshold showing of nexus.

For the reasons discussed in CalAmp's Motion in Limine (Dkt. 96 at 16-17), Omega

32

should have been precluded from discussing indirect infringement, and the jury should not have been instructed on indirect infringement.  As discussed above in Section I, the verdict form only asked about direct infringement, so any discussion of indirect infringement served no purpose other than to confuse and prejudice the jury.

For the reasons discussed in CalAmp's Motion in Limine (Dkt. 96 at 18-19), Omega should have been precluded from introducing evidence regarding CalAmp's patents.  As discussed in note 7, *supra*, even the Court was confused regarding the Patent Office procedures governing CalAmp's citation of prior art in those patents.  And it is well settled that a defendant's pursuit of patents on subject matter within the scope of the plaintiff's patent is irrelevant as a matter of law.  *See Wyers*, 616 F.3d at 1242, 1245.

Omega's Mr. Flick was improperly permitted to testify regarding prior litigation in which DEI was found to be a willful infringer.  Dkt. 179 at 62:21-66:13.  This testimony was irrelevant, and certainly more prejudicial than probative, because it invited the jury to infer that because DEI had been found to be a willful infringer, the same finding should be made for CalAmp.  Admission of this testimony was plain error.

Over CalAmp's objections, Omega played testimony regarding CalAmp's removal of certain information from its website.  Dkt. 126 at 4 (overruling objections to Ex. 22, Chen Dep. at 113:17-114:2, 114:5-16).  As discussed above in Part IV, this incident does not evidence bad faith, and it has no other conceivable relevance.  All testimony and documents regarding this incident should have been excluded.

Omega was permitted to play testimony regarding prior lawsuits that Omega filed against CalAmp's customers not involving the patents-in-suit.  As explained above in Part

III, these prior lawsuits are irrelevant.  All testimony regarding these lawsuits should have been excluded; its admission was plain error.

The Court overruled CalAmp's objection to Omega's mischaracterization of Mr. Hergesheimer's deposition testimony during the cross examination of Mr. Andrews, where Omega asserted that Mr. Hergesheimer had testified that "sending a signal and getting a response would be a control function."  Dkt. 183 at 120:14-20.  Mr. Hergesheimer in fact testified that he would **not** consider that to be a control function, even if someone else hypothetically might do so.  Ex. 9, 4/22/15 Hergesheimer Dep. at 42:10-19.  When Mr. Andrews stated that he agreed with Mr. Hergesheimer, that left the jury with the mistaken impression that Mr. Andrews agreed with Omega's definition of "control function."

Omega's closing argument was peppered with prejudicial remarks that were not supported by the evidence or were designed to unfairly prejudice CalAmp.  Omega asserted without evidence that CalAmp "snicker[ed]" at Mr. Flick when the parties met to discuss Mr. Flick's patents, and otherwise sought to portray CalAmp negatively because its witnesses are educated.  *E.g.,* Dkt. 184 at 7:10-18 ("You barely got out of high school"), 10:3-15, 12:7-8 ("They all thought they were smarter than Mr. Flick"), 20:9-22 ("[y]ou can imagine the chuckling"), 24:24-25, 33:6-17, 35:1-8.  Omega sought to draw adverse inferences from the fact that certain CalAmp employees appeared via deposition, rather than live.  *E.g.*, *id.* at 11:23-12:2, 24:14-19 ("It's his right not to show up, not to participate, not to care about these proceedings"), 33:6 ("He decided to show up"), 34:7-24 ("it was his decision to try to keep his engineers at home so we couldn't inquire any further").  Omega sought to draw unsupported inferences from CalAmp's decision to seek a patent of its own.  *Id.* at 11:9-22,

34

22:13-23:8.  Omega sought to draw an adverse inference from the fact that CalAmp did not present the results of its prior art investigation at trial, even though Omega convinced the Court to exclude that evidence.  *Id.* at 15:1-12 ("yet, when the time came to present that evidence, we heard about big stacks, little stacks"), 33:18-24 ("We heard all about his big stack and his little stack.  Didn't hear any analysis of those patents").  Omega also made misleading references to the DEI litigation and the prior CalAmp litigation not involving the patents-in-suit, and to the removal of information from CalAmp's website, all as discussed above.  *E.g.*, *id.* at 9:18-22, 14:2-25, 19:3-11, 21:3-21, 23:11-18, 26:5-12, 33:25-34:2.  Rather than focus on the relevant issues, Omega sought to unfairly portray CalAmp as a bad actor. It was plain error to permit Omega to make these inflammatory arguments.

**E.      The Cumulative Effect Of The Evidentiary Errors Deprived CalAmp Of A Fair Trial.**

Even if individual evidentiary errors did not cause sufficient prejudice to merit a new trial, the cumulative effect of all of these errors deprived CalAmp of its right to a fair trial. *See Martin v. Tex. Emp'rs. Ins. Ass'n*, 193 F.2d 645, 646 (5th Cir. 1952) ("The cumulative effect of the errors committed … entitle the appellant to a new trial").

**F.      Weight of Evidence**

If the Court does not grant JMOL with regard to the infringement or invalidity grounds identified above, CalAmp requests in the alternative that it be granted a new trial because the jury's verdict was against the weight of the evidence.

## CONCLUSION

For the foregoing reasons, CalAmp respectfully requests that it be granted judgment as a matter of law, or, in the alternative, a new trial.

Dated:  May 22, 2017                     Respectfully submitted,


                                         By: *s/* Bryan C. Mulder

                                         THOMAS D. REIN, ESQ.
                                         *(Pro Hac Vice)*
                                         CONSTANTINE L. TRELA, JR., ESQ.
                                         *(Pro Hac Vice)*
                                         STEPHANIE P. KOH, ESQ.
                                         *(Pro Hac Vice)*
                                         BRYAN C. MULDER, ESQ.
                                         *(Pro Hac Vice)*
                                         **SIDLEY AUSTIN LLP**
                                         One South Dearborn St.
                                         Chicago, IL 60603
                                         Telephone:     (312) 853-7000
                                         Facsimile:     (312) 853-7036
                                         email: trein@sidley.com


                                         *-and-*

                                         JOEL A. KAUTH, ESQ.
                                         *(Pro Hac Vice)*
                                         **KPPB LLP**
                                         2400 East Katella Avenue, Suite 1050
                                         Anaheim, California  92806
                                         Telephone:     (949) 852-0000
                                         Facsimile:     (949) 852-0004
                                         E-mail: joel.kauth@kppb.com

                                         *-and-*

                                         CARRIE ANN WOZNIAK, ESQ.
                                         Florida Bar No. 0012666
                                         **AKERMAN LLP**
                                         420 South Orange Avenue, Suite 1200
                                         Orlando, FL 32801-4904
                                         Tel.:    407-423-4000
                                         Fax:     407-843-6610
                                         E-mail: carrieann.wozniak@akerman.com

CHRISTOPHER S. CARVER, ESQ.
Florida Bar No. 993580
**AKERMAN LLP**
One Southeast Third Avenue, 25th Floor
Miami, FL 33131-1714
Tel.: 305-374-5600
Fax: 305-374-5095
E-mail:  christopher.carver@akerman.com

*Attorneys for CalAmp Corp.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY, that I electronically filed a true and correct copy of the

foregoing on May 22, 2017 with the Clerk of Court using CM/ECF. I also certify that the

foregoing document is being served this day on parties as listed (through counsel or those

reflected as appearing without counsel) in the below Service List via transmission of Notices

of Electronic Filing generated by CM/ECF or in some other authorized manner for those

counsel or parties who are not authorized to receive electronically Notices of Electronic

Filing.

s/  Bryan C. Mulder
Attorney

SERVICE LIST

*Omega Patents, LLC v. CalAmp Corp.*
*Case No. 6:13-cv-1950-PGB-DAB*
*United States District Court, Middle District of Florida*

Christopher S. Carver, Esq.
AKERMAN LLP
One S.E. Third Avenue – 25th Floor
Miami, FL 33131-1714
Tel.: 305-374-5600
Fax: 305-374-5095
E-mail: christopher.carver@akerman.com

Peter Chiabotti, Esq.
AKERMAN LLP
222 Lakeview Avenue, Suite 400
West Palm Beach, FL: 33401
Tel.: 561-653- 5000
Fax: 561-659-6313
E-mail: peter.chiabotti@akerman.com

Joel Kauth, Esq.
KPPB LLP
2400 East Katella Avenue, Suite 1050
Anaheim, CA 92806
Tel.: 949-852-0000
Fax: 949-852-0004
E-mail: joel.kauth@kppb.com

*Attorneys for CalAmp Corp.*

Brian R. Gilchrist, Esq.
Ryan Thomas Santurri, Esq.
ALLEN, DYER, DOPPELT,
MILBRATH & GILCHRIST, P.A.
255 S. Orange Ave., Suite 1401
P.O. Box 3791
Orlando, FL 32802
Tel.: 407-841-2330
Fax: 407-841-2343
E-mail: bgilchrist@addmg.com
E-mail: rsanturri@addmg.com

*Attorneys for Omega Patents, LLC*